2004 VT 15

# Lynne Robertson v. Mylan Laboratories, Inc., Bertek, Inc. and Sharad Govil

[848 A.2d 310]

No. 01-466

Present: Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ.

Opinion Filed February 6, 2004
Motion for Reargument Denied March 8, 2004

---

[1] Justice Morse sat for oral argument but did not participate in this decision.

*Andrew Jackson*, Middlebury, for Plaintiff-Appellant.

*Patricia M. Sabalis* of *Downs Rachlin Martin PLLC*, Burlington, and *Kathryn Mrkonich-Wilson* of *Littler Mendelson, P.C.*, Minneapolis, Minnesota, for Defendants-Appellees.

¶ 1. **Dooley, J.** In this workplace gender discrimination case brought under the Vermont Fair Employment Practices Act, 21 V.S.A. §§ 495-496, plaintiff Lynne Robertson appeals the superior court's grant of summary judgment in favor of defendants Mylan Laboratories, Inc., Bertek, Inc., and Sharad Govil. Plaintiff claims that defendants discriminated against her by failing to promote her, by giving her a low level of pay relative to her male peers at the company, and by terminating her in retaliation for her gender discrimination complaint. We affirm.

## I. Facts and Procedural History[2]

¶ 2. Plaintiff was employed as a scientist in the Research and Development Division at Bertek, Inc. (now known as Mylan Technologies, Inc.), a St. Albans-based pharmaceutical company that develops and manufactures transdermal (through the skin) drugs. Bertek is a subsidiary of Mylan Laboratories, Inc. Plaintiff was hired by Bertek in September 1993 after interviewing with Dr. Ludwig Weimann and Dr. Sharad Govil. According to Govil, he supported hiring plaintiff, although plaintiff disputes that fact. At that time, plaintiff held a B.S.

---

[2] We note at the outset that there is a confusion over the admissibility of the contents of certain affidavits submitted by plaintiff, in particular two affidavits of plaintiff and one affidavit of Michael Fulton, a prior Bertek employee. The trial court apparently struck these three affidavits in their entirety after focusing solely on a few assertions contained in them that it found to be inadmissible. Plaintiff failed to challenge this ruling in her brief, but in response to defendants' reliance on the rulings in their brief, asserted in her reply brief that the court's ruling was error. We need not consider an argument raised for the first time in a reply brief. See *In re Wal*Mart Stores, Inc.*, 167 Vt. 75, 86, 702 A.2d 397, 404 (1997). In any event, given that virtually all of plaintiff's factual allegations appear in depositions, particularly hers, and documentary evidence, striking the affidavits is of limited significance. Moreover, to the extent that this decision relies on the absence of evidence that might have been supplied by the affidavits, it also relies on other grounds.

degree in biology and a master's degree in biochemistry, and had previous experience in the pharmaceutical industry and drug formulation, but had no prior educational or work experience in transdermal drug development. Throughout her career at Bertek, she worked directly or indirectly under Govil, who is now General Manager of Bertek.

¶ 3. In 1994, while working full-time at Bertek, plaintiff began taking courses in pharmacology at the University of Vermont in pursuit of her doctoral degree, with Govil's approval. Plaintiff claims that Govil initially did not wish to approve her education, and did so only after she went to higher management with her request. Regardless, Govil twice approved plaintiff's request for a flexible work schedule, and also approved Bertek's payment of her tuition. Plaintiff completed the course requirements for the Ph.D. at the end of 1995.

¶ 4. Plaintiff worked under Govil in 1994 and 1995, and was promoted twice during that time, first to Senior Scientist in May 1995 at a salary of $46,275, then to Manager of Permeation and Dissolution in July 1995 at a salary of $52,000. In late 1996, plaintiff asked Govil to transfer her to the Formulations Group because she did not like the way she was being treated by her supervisor. Govil granted this request, and plaintiff became Manager of Permeation in the Formulations Group.

¶ 5. Despite the promotions and the discretionary transfer Govil approved, during 1997 and early 1998 plaintiff complained to several Bertek personnel that Govil treated her unfairly because of her gender. She claims that Dr. Scott Burton, Manager of Formulations and plaintiff's immediate supervisor, indicated to her that he agreed with her, and that Interim President Lou Debone and General Manager Matthew Costigan told her that Govil's actions were due to his "cultural differences" with respect to the treatment of women. Also during that period, several scientists in the Research and Development department, including Burton, left Bertek. Plaintiff claims that many of those employees — most of whom were male — left because they were dissatisfied with Govil's style and management.

¶ 6. The events underlying much of this case relate to Govil's actions in response to the departure of Burton and others. Govil proposed to upper management to split the Formulations Group into two groups: drug delivery and polymer science. In response to problems with drugs under development, he proposed to upgrade the scientific ability of the staff leaders in product development. As the restructuring was

approved in February of 1998, the Manager of Formulations position was eliminated, and a new position of Director of Research and Development created. The positions of Supervisor of Drug Delivery and Supervisor of Polymers were created to report to the new research and development director.

¶ 7. While the restructuring was going on, Govil announced an interim organization. On January 21, 1998 he made plaintiff interim head of formulations while she continued to serve as Manager of Permeations. Govil asserts that this promotion was due to plaintiff's seniority, although plaintiff claims that Govil never conveyed that reason to her. Govil drafted job descriptions for two new supervisor positions. For the position of Supervisor of Drug Delivery, the job description required a Ph.D. in Pharmaceutics, Material Science, or Chemical Engineering, as well as five years of transdermal formulations experience.

¶ 8. Consistent with the view that Bertek needed to upgrade the scientific skills of key employees in product development, Govil initiated a search for qualified persons. He identified Dr. Kenneth Miller as the most likely candidate for Supervisor of Drug Delivery, based on an interview in January 1998 before the position was approved. Govil posted the Supervisor of Drug Delivery position on February 13, 1998, and shortly after the application closing date, one week later, hired Dr. Miller.

¶ 9. Plaintiff believes that she should have been hired as Supervisor of Drug Delivery and she was rejected because she is a woman. She alleges a number of "irregularities" in the hiring of Dr. Miller:

1. He was interviewed before the job was even created. In plaintiff's view, this process violated a policy requiring that open positions be posted and that internal candidates be interviewed before external candidates.

2. The job description was created to mirror Dr. Miller's qualifications, rather than the reverse.

3. The opening was posted on Friday in violation of a policy requiring posting on Wednesday and was open for a week for which Govil believed plaintiff would be on vacation.

4. Bertek had on other occasions waived minimum education requirements for applicants who were close to having the needed education qualifications. Govil refused to waive the minimum qualifications in plaintiff's case.

5. Miller was unqualified because he lacked industrial experience, which is generally favored at Bertek; during the interview process, Miller stated that "getting drugs to go through skin" was not his area of expertise.

¶ 10. Plaintiff submitted an application for the Supervisor of Drug Delivery position on February 19, and the next day met with Govil for over an hour to discuss the position. According to defendants, Govil did not believe that plaintiff was qualified for the position due to her lack of a Ph.D. and the requisite five years of transdermal formulations experience. In contrast, Miller held a B.S. and a Ph.D. in chemical engineering, had worked for a successful competitor as well as several universities where he had performed transdermal drug research work for private corporations, and had authored publications and made numerous presentations on transdermal drugs.

¶ 11. Plaintiff was subsequently told that she was being promoted and that her salary would be increased to $60,000 (approximately $4,000 more than she was being paid at the time). The exact position that plaintiff was promoted to is disputed. Plaintiff claims that her new title was to be Senior Manager of Projects, and that she was to be in charge of all of the corporation's projects. She contends that this promotion was inexplicably delayed, and that her new pay was substantially less than the $80,000 that other staff at that level — specifically, new Supervisor of Drug Delivery Miller — were receiving. Defendants respond that, after plaintiff had submitted a proposed job description, defendants provided plaintiff with a revised position description stating that her title would be Project Manager and that her salary would be $60,000. Defendants also claim that plaintiff was told that there would be a transition period as she wrapped up work on her other projects.

¶ 12. In May 1998, plaintiff filed a formal complaint with Bertek, claiming that she was denied the Supervisor of Drug Delivery position, the Senior Manager of Projects title, and an $80,000 salary due to her gender. Plaintiff alleges that as a result of her complaint she was treated unfairly by Govil and other Bertek personnel. The Human Resources department subsequently conducted an investigation of the complaint and ultimately found that plaintiff had not been subject to unfair or discriminatory treatment. In July 1998, plaintiff filed a charge of gender discrimination with the Vermont Attorney General and the Equal Employment Opportunity Commission (EEOC).

Following an investigation, the EEOC concluded that there was no evidence to suggest that plaintiff had been discriminated against based on her gender or retaliated against for filing a complaint, and dismissed her charge.

¶ 13. Plaintiff continued to work for Bertek as Project Manager, even after she filed the current lawsuit in Franklin County Superior Court in July 1999. Finally, in February 2000, plaintiff was terminated for breach of her confidentiality agreement with Bertek for alleged dissemination, via a resume submitted to a recruiter, of information regarding projects she had worked on for the company. Plaintiff contends that none of the information found on the resume was detrimental to the company and that other employees had divulged similar types of information and had not been punished. She added to this litigation a count that defendants retaliated against her for her complaint to the Vermont Attorney General and the filing of this case.

¶ 14. As amended after plaintiff was terminated, the complaint in this case had three counts: (1) defendants Govil, Bertek and Mylan Laboratories committed unlawful employment practices in violation of the Vermont Fair Employment Practices Act (FEPA), 21 V.S.A. § 495 et seq., in failing to hire plaintiff as Supervisor of Drug Delivery; (2) defendants committed unlawful employment practices in violation of FEPA by actions against plaintiff taken in retaliation for her complaints of gender discrimination directly to defendants and to the Attorney General; and (3) defendants committed unfair employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., by all the above actions. In response to a motion by defendants, the trial court rendered summary judgment for defendants on all counts on July 31, 2001. Plaintiff subsequently brought this appeal contesting the dismissal of the two FEPA counts.

## II. Summary Judgment Standard

¶ 15. On review of a grant of summary judgment, this Court will apply the same standard as that used by the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether there is a genuine issue as to any material fact, we will accept as true the allegations made in opposition to the motion for summary judgment, so long as

they are supported by affidavits or other evidentiary material. *Quechee Lakes Landowners' Ass'n*, 170 Vt. at 28, 742 A.2d at 736. Further, the nonmoving party receives the benefit of all reasonable doubts and inferences. *Samplid Enters., Inc. v. First Vt. Bank*, 165 Vt. 22, 25, 676 A.2d 774, 776 (1996). Nevertheless, the opponent to a summary judgment motion cannot simply rely on mere allegations in the pleadings to rebut credible documentary evidence or affidavits, *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266, 438 A.2d 373, 375 (1981), but must respond with specific facts that would justify submitting her claims to a factfinder. V.R.C.P. 56(e); *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). If such facts are contained in affidavits, these affidavits must be made on personal knowledge and set forth facts that would be admissible in evidence. V.R.C.P. 56(e).

### III. Failure to Promote Claim

¶ 16. We first address plaintiff's FEPA claim of discrimination for failure to promote her. Under FEPA, it is an "unlawful employment practice ... [f]or any employer, employment agency or labor organization to discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, place of birth, or age or against a qualified individual with a disability." 21 V.S.A. § 495(a), (a)(1). The standards and burdens of proof to be applied under FEPA are identical to those applied under Title VII of the United States Civil Rights Act. See *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161, 624 A.2d 1122, 1128 (1992).

### A. The Applicable Framework

¶ 17. Plaintiff's first claim of error is that the trial court applied the wrong burden allocation framework. Plaintiff argues that since she presented direct evidence — in particular, alleged comments made to her or her husband[3] by senior officers at Bertek — that gender played a motivating factor in defendants' decision not to promote her, the two-step framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-44 (1989), should apply, rather than the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), that the trial court applied. Defendants counter that the

---

[3] Plaintiff's husband is Maurice Miller, who was Director of Manufacturing at Bertek during the relevant time period.

evidence presented is insufficient to trigger the *Price Waterhouse* analysis, and that the trial court correctly applied the *McDonnell Douglas* framework. We agree with defendants that the *McDonnell Douglas* analysis was the correct framework to apply in this case.

¶ 18. This Court has adopted both the *Price Waterhouse* and the *McDonnell Douglas* frameworks. *Hodgdon*, 160 Vt. at 161, 624 A.2d at 1128. The *Price Waterhouse* framework "is invoked when the plaintiff initially establishes that her sex played a motivating part in an employment decision." *Id.*; see also *Graff v. Eaton*, 157 Vt. 321, 324-25, 598 A.2d 1383, 1384-85 (1991). If such direct evidence of discrimination is presented, "the burden of persuasion then falls upon, and remains with, the employer to prove 'by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.'" *Graff*, 157 Vt. at 324, 598 A.2d at 1384 (quoting *Price Waterhouse*, 490 U.S. at 258). If the plaintiff presents only circumstantial evidence of discrimination, however, the three-step burden shifting analysis of *McDonnell Douglas* is applied. *Hodgdon*, 160 Vt. at 162, 624 A.2d at 1129. Under *McDonnell Douglas*, in contrast to the analysis under *Price Waterhouse*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

¶ 19. Plaintiff relies particularly on four statements, three to her and one to her husband, that she or her husband testified to in their respective depositions. Three of these precede Govil's actions in creating and filling the position of Supervisor of Drug Delivery. Apparently, plaintiff was complaining about Govil's treatment of her to her supervisor, Scott Burton, to the interim President of Bertek, Lou Debone, and to the General Manager of Bertek, Matthew Costigan. Plaintiff alleges that when she asked why Govil unfairly treated her, both Debone and Costigan answered it was because of "cultural differences." She alleges that when she asked Burton if Govil unfairly treated her because she is a woman, he answered "there's some of that." The fourth, by Costigan to plaintiff's husband, is alleged to have come after Dr. Miller was hired. Again, Costigan attributed Govil's treatment to cultural differences and when asked if that meant that it was because plaintiff is a woman, "He didn't answer, but he winked and nodded his head to me and pointed like that in an affirmative action."

¶ 20. We do not believe these statements meet the strict requirement of direct evidence set out in *Price Waterhouse*. Neither "stray remarks in the workplace . . . [n]or . . . statements by nondecisionmakers, [nor] statements by decisionmakers unrelated to the decisional process itself" will be considered as direct evidence of an employer's discriminatory intent. *Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring); *EEOC v. Liberal R-II Sch. Dist.*, 314 F.3d 920, 923 (8th Cir. 2002); *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 n.2 (3d Cir. 2002); *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 581 (1st Cir. 1999); see also 1 L. Larson, Employment Discrimination § 8.07[3], at 8-86 (2d ed. 2003) ("A statement will not be considered direct evidence of an employer's discriminatory intent if it is made by an individual who was not a participant in the decision-making process.").

¶ 21. Plaintiff does not dispute that neither Costigan, Debone nor Burton — despite their high positions within Bertek — was part of the decision not to promote her. The alleged comments to plaintiff did not describe these administrators' own decision-making process, but were instead mere speculation as to Govil's state of mind during his decision making. At least three of the statements were about other actions of Govil, not the decision to hire Ken Miller as Supervisor of Drug Delivery. The statements are insufficient as direct evidence of discrimination. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997) (statements made by nondecision maker amount to mere speculation as to thoughts of decision maker, and do not provide "smoking gun" evidence required for direct inference of discriminatory intent); *Edwards v. Schlumberger-Well Servs.*, 984 F. Supp. 264, 275 (D.N.J. 1997) (statements by nondecision maker that plaintiff was terminated because she was female were not "discriminatory statements made in the decisionmaking process, but rather were statements about discriminatory views that were held by decisionmakers" and therefore were insufficient to satisfy burden in a mixed-motive analysis); see also *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (statement that police chief would never send a female to the academy did not "bear directly on the contested employment decision" so as to trigger a mixed motive standard of liability) (internal quotations omitted); *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 452-53 (8th Cir. 1997) (statement by person with no decision making authority that plaintiff "was not terminated because of his ability or his quality of work but because of a [sic] litigation that he is

involved in" did not constitute direct evidence) (internal quotations omitted); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1218 (5th Cir. 1995) (statements by nondecision maker that plaintiff had a "good case of age discrimination" and that it "must have been your age" did not provide direct evidence of age-related animus) (internal quotations omitted); *Ahrens v. Perot Sys. Corp.*, 39 F. Supp. 2d 773, 781 (N.D. Tex. 1999) (statements by supervisor and fellow employees might be sufficient to infer a discriminatory motive, but were insufficient to constitute direct evidence of discrimination under mixed-motive analysis).

¶ 22. Plaintiff urges that we look at the remaining evidence, much of it set forth in the statement of facts above and discussed later in this opinion, as direct evidence that gender discrimination motivated Govil's action. To the extent the evidence involves the hiring decision, it does not show directly that plaintiff's gender was a motivating factor in that decision. To the extent the evidence goes to what plaintiff characterizes as an abusive working environment for women in the company, it is not related sufficiently to the hiring decision to invoke the *Price Waterhouse* standard.

## B. The *McDonnell Douglas* Analysis

¶ 23. Plaintiff next claims that the trial court erred in finding that she failed to make out a prima facie case as required by *McDonnell Douglas*. Defendants argue that the court was correct in finding that plaintiff had not made out her prima facie case, and, even so, plaintiff failed to demonstrate that Bertek's justification for its actions was a mere pretext for unlawful discrimination. We find that plaintiff produced sufficient evidence to make out a prima facie case, but that she has not carried her burden to show that defendants' actions were pretextual, sufficient to withstand summary judgment.

### 1. The *McDonnell Douglas* Framework

¶ 24. *McDonnell Douglas* "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), in order to "progressively . . . sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255 n.8. At the outset, the plaintiff has the burden of establishing a prima facie case of employment discrimination. *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 15, 175 Vt. 413, 834 A.2d 37; *Hodgdon*, 160 Vt. at 159, 624 A.2d at 1127. This step serves a

screening function: it eliminates the most patently meritless claims — i.e., where the plaintiff was rejected for "common nondiscriminatory reasons." *Burdine*, 450 U.S. at 254. The evidentiary burden required of the plaintiff at this stage is a relatively light one. See *id.* (burden at prima facie stage is "not onerous"); *Beckmann v. Edson Hill Manor, Inc.*, 171 Vt. 607, 608, 764 A.2d 1220, 1222 (2000) (mem.).

¶ 25. The specific elements of a prima facie case may vary depending on the claim and the particular facts of the case. See *Burdine*, 450 U.S. at 253 n.6 (prima facie standard is "not inflexible" and may differ given differing factual situations). In general to establish a prima facie case of employment discrimination, the plaintiff must demonstrate that: (1) she was a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding this adverse employment action permit an inference of discrimination. See *McDonnell Douglas Corp.*, 411 U.S. at 802; *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001); see also *State v. Whitingham Sch. Bd.*, 138 Vt. 15, 19, 410 A.2d 996, 998-99 (1979); *Carpenter v. Cent. Vt. Med. Ctr.*, 170 Vt. 565, 566, 743 A.2d 592, 594-95 (1999) (mem.) (elements for age discrimination).

¶ 26. Once the plaintiff has established a prima facie case, a presumption of discrimination arises, *Hicks*, 509 U.S. at 506, and the burden shifts to the employer "'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Hodgdon*, 160 Vt. at 159, 624 A.2d at 1127 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). This second step serves to respond to the plaintiff's prima facie case as well as "to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255-56. The employer's burden at this second stage is solely one of production, not persuasion. *Id.*

¶ 27. If the employer meets his burden at this stage, the presumption of discrimination disappears, *Hicks*, 509 U.S. at 510-11, and the burden then shifts back to the plaintiff to prove that the employer's justification is a mere pretext for discrimination. *Hodgdon*, 160 Vt. at 159, 624 A.2d at 1127. This third step is in keeping with the fact that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

## 2. The Prima Facie Case

¶ 28. Returning to the case at hand, the first issue concerns plaintiff's attempt to establish a prima facie case of discrimination. The trial court found that plaintiff did not establish a prima facie case for two reasons: (1) plaintiff failed to satisfy the second element because she did not demonstrate that she was qualified for the Supervisor of Drug Delivery position, and (2) plaintiff failed to satisfy the fourth element because she did not demonstrate that Miller had similar or lesser qualifications for the position than she, and thus there could be no inference of gender discrimination. Plaintiff contends that in making such a finding the trial court ignored relevant evidence suggesting that plaintiff was qualified for the open position but that Govil manipulated the job opening in order to prevent her from obtaining that position because of her gender. We find that plaintiff's proffer of evidence was sufficient to meet her burden at the prima facie case stage.

¶ 29. Under *McDonnell Douglas*, if plaintiff is not objectively qualified for the position, then she cannot make out a prima facie case. Defendants persuaded the trial court to conclude that plaintiff was not qualified because the job description required a Ph.D. in Pharmaceutics, Material Science, or Chemical Engineering, and plaintiff did not have a Ph.D. at that time. We do not find the educational qualification conclusive. Plaintiff was close to obtaining her Ph.D., and her evidence suggests that Bertek had often let other employees assume positions when they did not meet all of the educational requirements but were close to completing them. Moreover, plaintiff was performing the nearest comparable job, Manager of Formulations, on an interim basis. She claimed that the responsibilities did not substantially change, but that Govil changed the title and added qualifications to give the job to his hand-picked male candidate. See *Arrington v. Cobb County*, 139 F.3d 865, 875 (11th Cir. 1998) (prima facie case established where plaintiff presented evidence that responsibilities of new position given to male employee were the same as those that plaintiff had performed before restructuring); *Gates v. BEA Assocs.*, No. 88 Civ. 6522 (SJM), 1990 WL 180137, at **1-2 (S.D.N.Y. Nov. 13, 1990) (summary judgment at prima facie stage not warranted where there were disputed issues as to whether degree requirement was bona fide job qualification and whether it was added solely to exclude plaintiff from consideration); Larson, *supra*, § 8.02[3], at 8-25 ("A court may be inclined not to take the employer's stated qualifications seriously when in fact the employer does not consistently adhere to those stated

qualifications when making employment decisions."). Again, we stress that plaintiff's burden is relatively light at the prima facie case stage.

¶ 30. We have a similar view of the trial court's holding that plaintiff failed to demonstrate the fourth element of her prima facie case because she could not show that Miller had similar or lesser qualifications for the position than she. See *Walker v. Mortham*, 158 F.3d 1177, 1185 (11th Cir. 1998) (issue of comparative qualifications more appropriate for rebuttal stage, as employer is in better position to provide information pertaining to this issue); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997) (requiring plaintiff to establish comparative qualifications at prima facie case stage effectively removed his opportunity to establish pretext); Larson, *supra*, § 8.02[6], at 8-31 ("[C]ourts have generally repudiated th[e] view [that failure of the plaintiff to present evidence of comparative qualifications is fatal to the prima facie case], holding that there is no such requirement and that a plaintiff need only demonstrate minimum qualifications."). Plaintiff must come forward with evidence to show that the circumstances surrounding her failure to receive the Supervisor of Drug Delivery job permit an inference of unlawful discrimination. See *Carpenter*, 170 Vt. at 567, 743 A.2d at 595. Again, we find that the evidence that the job description and job qualifications were manipulated, combined with the fact that a man was chosen for the position over plaintiff, is sufficient to permit such an inference, see, e.g., *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996) (plaintiff made out prima facie case "by showing that she is a member of a protected class, a black female; that she applied for the positions; that she was qualified for the positions; and that the positions were filled by a white male and a white female"), and discharge plaintiff's very light burden at this stage. See *Boulton*, 2003 VT 72, at ¶ 16; see also *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65 (2d Cir. 1995) ("[P]laintiff's burden of proof in a . . . discrimination action is *de minimis* at the *prima facie* stage . . . ."). We therefore hold that plaintiff has demonstrated a prima facie case of discrimination.

### 3. Evidence of Pretext[4]

■ ¶ 31. Pursuant to the second stage of the *McDonnell Douglas* analysis, defendants have offered evidence in support of a legitimate business reason for their actions: the elimination of the Manager of Formulations position, and the inclusion of certain qualifications in the job description for the new Supervisor of Drug Delivery position were the result of restructuring done in response to large employee turnover and a perceived lack of scientific ability and expertise in certain specialty areas in the Research and Development department. The important element of this justification, for purposes of this case, is that Govil, and senior management who approved the restructuring, made an early, pre-recruitment decision that the necessary qualifications and skill for the senior drug development jobs did not exist among the employees who were left after the extensive turnover. Thus, in creating the restructuring plan and job descriptions, Govil made the decision that neither plaintiff or any other existing employee would be hired to fill the new jobs. At this second stage of the *McDonnell Douglas* analysis, defendants have only a burden of production, rather than one of persuasion, see *Boulton*, 2003 VT 72, at ¶ 15, and plaintiff does not dispute that the reasons defendants proffered for their hiring decision, if believed, were legitimate and nondiscriminatory. We conclude that defendants have met their burden under *McDonnell Douglas*. Thus the only question that remains is whether the total evidence offered by plaintiff is sufficient to carry her ultimate burden of demonstrating that Bertek's justification is a mere pretext for discrimination. We conclude that plaintiff has not carried her burden here.

¶ 32. As we indicated above, we have generally followed the burden allocation rules applicable to Title VII of the Civil Rights Act of 1964. The United States Supreme Court has addressed the burden of demonstrating pretext in a number of cases, and its latest discussion of the nature of the burden in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), is the most pertinent. Although *Reeves* is an Age Discrimination in Employment Act (ADEA) case, it was decided

---

[4] We recognize that in prior cases this Court, after finding that the trial court erred in finding that the FEPA plaintiff had failed to prove a prima facie case, reversed and remanded a summary judgment finding against the plaintiff without addressing the issue of pretext. See, e.g., *Carpenter v. Cent. Vt. Med. Ctr.*, 170 Vt. 565, 569, 743 A.2d 592, 597 (1999) (mem.). Here, however, the pretext issue was specifically addressed by the trial court as an independent ground for its decision and has been fully briefed by both parties.

on the basis that the burdens for the ADEA and for Title VII are the same. See 530 U.S. at 142. The Supreme Court took the case "to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination, combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination." *Id.* at 140 (internal citations omitted). The Court answered the question in the affirmative, holding that a plaintiff's prima facie case, combined with sufficient evidence of pretext, "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148. The Court also recognized, however, that this will not always be case:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* Although the Court was describing the standard for determining whether the employer was entitled to a judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, commentators and courts after *Reeves* have concluded that the decision also describes the standard for determining whether the employer is entitled to summary judgment. See *Williams v. Raytheon Co.*, 220 F.3d 16, 19 (1st Cir. 2000) (applying *Reeves* to a summary judgment motion); C. Thompson, *Juries Will Decide More Discrimination Cases: An Examination of Reeves v. Sanderson Plumbing Products, Inc.*, 26 Vt. L. Rev. 1, 2 (2001); L. Ware, *Inferring Intent from Proof of Pretext: Resolving the Summary Judgment Confusion in Employment Discrimination Cases Alleging Disparate Treatment*, 4 Employee Rts. & Emp. Pol'y J. 37, 63 (2000); Note, *Reeves v. Sanderson Plumbing Products: Stemming the Tide of Motions for Summary Judgment and Motions for Judgment as a Matter of Law*, 52 Mercer L. Rev. 1549, 1565 (2001). In part, they have reached this conclusion because

the *Reeves* Court commented that "the standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves*, 530 U.S. at 150 (internal quotations omitted).

¶ 33. *Reeves* explained the application of its ruling in terms consistent with our law on summary judgment, as set out above. Whether summary judgment is appropriate under *Reeves* depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered" on a summary judgment motion. *Reeves*, 530 U.S. at 148-49. The *Reeves* Court further clarified this standard:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Id.* at 150-51 (internal citations and quotations omitted).

¶ 34. Plaintiff has relied in part on the *Reeves* holding. Having adopted the burden shifting analysis of *McDonnell Douglas*, we see no reason not to adopt the standard of *Reeves* as a reasonable approach to analyzing evidence in an employment discrimination claim brought under FEPA. Thus, we would normally allow plaintiff to avoid summary judgment at this third step of the *McDonnell Douglas* analysis by demonstrating that there is an issue of material fact underlying the question of whether the employer's reason for its action was pretextual. We conclude that plaintiff has failed to meet this burden.

¶ 35. The difficulty with plaintiff's position is that the hiring decision was not a simple choice among applicants for a preexisting job. Defendants' assertion that they restructured and redefined the research and development management is largely unchallenged by plaintiff. This Court "may not second-guess an employer's nondiscriminatory business decisions, regardless of their wisdom." *Williams v. New York City Dep't of Sanitation*, No. 00 Civ. 7371 (AJP), 2001 WL 1154627, at *18 (S.D.N.Y. Sept. 28, 2001) (citing

cases); see also *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (courts should not act as "super personnel departments" that second-guess employer's business judgments); *Tarshis v. Riese Org.*, 211 F.3d 30, 37 (2d Cir. 2000) ("Title VII ... [does] not grant courts authority to second-guess the wisdom of corporate business decisions . . . ."). Moreover, much of the evidence plaintiff has relied upon is entirely consistent with defendants' reason for their action and does not raise an inference of pretext.

¶ 36. To the extent that plaintiff has attempted to show that defendants' rationale for the hiring decision was a pretext, she has relied upon three theories. The first is that Govil manipulated the hiring process in violation of company policies to allow him to hire Miller. As we held above, this evidence helped plaintiff to demonstrate a prima facie case, the first stage of the *McDonnell Douglas* framework, but it is unhelpful in demonstrating pretext. Once Govil decided that the existing Bertek employees did not have the necessary skills to lead the research and development of drugs, he had to conduct a search for persons with the needed qualifications. It is obvious that he could not find highly skilled persons with advanced educational degrees in the narrow field involved by simply announcing that positions were open and hoping that the right persons saw the announcement and applied. Consistent with his goals, Govil actively recruited Dr. Miller even before the restructuring was approved. Although Govil put less emphasis on the application process for internal candidates, we cannot conclude that he violated any company policies in the process,[5] and plaintiff did apply and was interviewed. In summary, at best plaintiff may have showed that Govil violated the spirit of company hiring procedures, but the arguable violations reinforced Govil's rationale for hiring Miller, rather than showing the rationale was a pretext for discrimination.

¶ 37. Her second theory of pretext — that she was more qualified than Miller — also does not meet her burden. It is undisputed that plaintiff did not meet the posted minimum qualifications for the job of

---

[5] For example, plaintiff argued that Bertek's policy required that internal candidates be interviewed before external candidates are interviewed. In fact, the policy requires only that internal candidates be interviewed before the position is filled. While it suggests that internal candidates be interviewed first, it does not require this procedure.

Plaintiff also argued that the position opening was posted on Friday, in violation of a company policy that required posting on Wednesday. In fact, the posting policy had been eliminated in 1997, well before the posting here.

Supervisor of Drug Delivery. There is no evidence to support plaintiff's argument that Govil adopted the minimum qualifications solely to give the job to Miller. Indeed, the minimum qualifications were entirely consistent with the business rationale of upgrading skill levels.

¶ 38. We cannot agree with her arguments against these central facts. Plaintiff's personal opinion of her relative qualifications cannot be determinative. See *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11th Cir. 2000) (plaintiff's opinion that she was more qualified than the person who was hired for the job she sought "is insufficient to raise a genuine issue of fact" as to whether the reasons given for the hiring decision were pretextual). Nor can we conclude that plaintiff has met her burden by showing that some of the responsibilities of the new job of Supervisor of Drug Delivery overlapped with those of the job she was performing on an interim basis. See *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002).

¶ 39. We do not believe that plaintiff's related allegation that the company had waived minimum qualifications in the past helps plaintiff's position in this context. Since the whole point of the restructuring was to upgrade skill and competency of research and development managers, any waiver of qualifications to hire an existing employee would defeat this point. Nor are we persuaded that plaintiff showed pretext by her husband's testimony that the General Manager of Bertek, Matthew Costigan, once told him that Miller should not be interviewed because he was an academician and did not have the "industrial experience" necessary for the job. Irrespective of the views of Costigan, who was not responsible for the hiring, it is undisputed that Miller met the minimum qualifications for the job, including five years of transdermal formulations experience, and that plaintiff did not.

¶ 40. We do not belittle plaintiff's evidence in support of her third theory — that women were subject to widespread discrimination at Bertek. Her evidence suggested that Bertek's work culture was frequently hostile to women,[6] that men held the upper research and

---

[6] Plaintiff relies on our decision in *In re Butler*, 166 Vt. 423, 697 A.2d 659 (1997), for the proposition that evidence of a hostile work environment can show disparate treatment and pretext. *Butler* was an appeal from a decision of the Vermont Labor Relations Board concluding that the decision to terminate a female state police officer because she failed to successfully complete her probationary period was based on gender discrimination. We affirmed holding that a hostile work environment was relevant to show "whether she was judged differently and more harshly than her male colleagues." 166 Vt. at 428, 697 A.2d at 663. There was no claim of pretext in *Butler*, and the decision did not address pretext. Although there may be cases where the presence of a hostile work environment

development positions,[7] that Govil was a poor manager and supervisor especially with respect to women employees, or that "cultural differences" adversely affected his attitude toward women employees. This evidence may be relevant under *Reeves*, 530 U.S. at 151-52, to support sufficient evidence that the stated reason for the hiring decision was pretextual, but it does not replace such evidence. It does not respond to defendants' business rationale for their hiring decision and show that it is a pretext.

■ ¶ 41. In general, plaintiff has failed to present sufficient evidence to rebut defendants' rationale beyond her own conclusory allegations, see *Quechee Lakes Landowners' Ass'n*, 170 Vt. at 28, 742 A.2d at 736 (conclusory allegations without facts to support them are insufficient to survive summary judgment), to contradict this evidence. See *Smith v. Am. Express Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988) (summary judgment for defendant appropriate when plaintiff failed to show pretext in selection of better qualified candidate for promotion). We conclude that plaintiff failed to meet her burden and that the trial court properly granted summary judgment against her on her claim that defendants illegally failed to promote her.[8]

---

is relevant to show pretext, this is not such a case. Plaintiff was denied the job she sought because she lacked education and experience qualifications, and not because her performance was inadequate although adversely affected by a hostile work environment. Moreover, plaintiff does not claim sexual harassment by Govil or other supervisors and employees. Nor does she claim that Govil, the only person involved in the alleged discriminatory action, was influenced by a general discriminatory atmosphere at Bertek; instead, plaintiff argues that her unfair treatment was the result of Govil's "cultural differences" with respect to his attitude towards women.

[7] Although this is a disparate treatment case, plaintiff has detailed the careers of other women in the company to argue that a "glass ceiling" exists, especially as to research and development jobs. We have inadequate information to determine whether the career moves are typical of those of women in the company generally, are different from those of men or show evidence of discrimination. In any event, statistical evidence of treatment of other women is rarely sufficient to show that an adverse employment decision with respect to plaintiff was pretextual. See *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993).

[8] Although not clearly delineated in either her complaint or her brief on appeal, two other counts of gender discrimination under FEPA appear to have been raised by plaintiff. Perhaps in an excess of caution, we address them as if they had been separately raised.

First, plaintiff claims that she was discriminated against by being paid less than her male counterparts at Bertek. Second, plaintiff claims that she was discriminated against by Govil who she alleges treated her poorly compared to men at the company. The trial court addressed both of these issues and granted summary judgment in favor of

## IV. Claim of Retaliation

■■■■ ¶ 42. Plaintiff's final claim is that Bertek retaliated against her for bringing a gender discrimination claim against it. To establish a prima facie case of retaliatory discrimination under FEPA, the plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment decisions; and (4) there was a causal connection between the protected activity and the adverse employment action. *Gallipo v. City of Rutland*, 163 Vt. 83, 92, 656 A.2d 635, 642 (1994); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995). If the plaintiff establishes a prima facie case, the burden shifts to the defendant-employer to articulate some legitimate nondiscriminatory reason for the alleged

---

defendants on both. We find that the trial court was correct in its reasoning and conclusions.

As to the claim of discrimination based on unequal pay, plaintiff has failed to make out a prima facie case. FEPA prohibits "paying wages to employees of one sex at a rate less than the rate paid to employees of the other sex for equal work that requires equal skill, effort, and responsibility, and is performed under similar working conditions." 21 V.S.A. § 495(a)(8). As part of her prima facie case of discrimination based on unequal pay, plaintiff must demonstrate that she was paid less than similarly situated males. See *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 719 (8th Cir. 2000); *Belfi v. Prendergast*, 191 F.3d 129, 139-40 (2d Cir. 1999); see also ¶ 25, *supra* (laying out basic elements of prima facie case of gender-based employment discrimination under FEPA). Plaintiff's sole piece of evidence in support of her unequal pay claim, however, is that Suresh Borsadia, a Principal Scientist, was paid $65,000 in 1996 at the same time that plaintiff, a Project Manager, was being paid $52,000. Because these two positions involved substantially different job duties, plaintiff and Borsadia were not similarly situated such as to provide evidence for the prima facie case. See *Boulton*, 2003 VT 72, at ¶¶ 19-20. Furthermore, plaintiff has not disputed defendants' claim that she was paid more than Joe Duda, a male Project Manager. Therefore, plaintiff has failed to establish her prima facie case, and thus the trial court was correct in granting summary judgment to defendants on this issue.

The trial court was also correct in granting summary judgment for defendants on the issue of Govil's alleged poor treatment of plaintiff. As part of her prima facie case, plaintiff must show that she suffered an "adverse employment decision" that affects the terms or conditions of her employment. See *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001); see also *Gallipo v. City of Rutland*, 163 Vt. 83, 92, 656 A.2d 635, 642 (1994) (prima facie case for retaliatory discrimination requires showing of adverse employment action). Plaintiff alleges that Govil left her out of meetings, did not provide her with information, transferred her staff from her group without consulting her, and reassigned her duties to men without consulting her. None of these instances of alleged unfair treatment, however, constitute an "adverse employment action." See ¶ 43, *infra*.

In view of our resolution of these claims, we do not reach defendants' argument that they are barred in whole or in part by the applicable statute of limitations.

retaliation. *Tomka*, 66 F.3d at 1308. If the defendant carries this burden of production, the plaintiff must then demonstrate that the defendant's reasons are pretext for discriminatory retaliation. *Id.* The trial court found that plaintiff had not established a prima facie case of retaliatory discrimination under FEPA and thus granted summary judgment in defendants' favor on these claims. We agree that the grant of summary judgment was appropriate.

¶ 43. Plaintiff claims that, as a result of filing a complaint with the company and later with the Vermont Attorney General's office, (1) she received a negative performance appraisal criticizing her knowledge of project management and her interpersonal communication skills; (2) Govil excluded her from interviews of job applicants, excluded her from project meetings, and ignored and failed to support her; (3) she was "demoted" to the position of Project Manager; and (4) Bertek terminated her employment. It is not disputed that plaintiff's filing of a gender discrimination complaint with the company and later with the Vermont Attorney General's office is a protected activity and that Bertek was aware of this activity. We thus turn to whether the individual actions that plaintiff complains of are "adverse employment actions" and, if so, whether these actions were the result of her filing of a complaint.

¶ 44. Neither the negative performance appraisal or Govil's alleged unfair treatment of plaintiff constitutes an "adverse employment action" so as to satisfy plaintiff's prima facie case. See *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) (reassignment of staff was not adverse employment action); *Johnson-Carter v. B.D.O. Seidman, LLP*, 169 F. Supp. 2d 924, 938-39 (N.D. Ill. 2001) (employer's denial of one training class in which African-American employee already had expertise, noninvitation to three staff meetings, requirement that employee work outside her area of expertise, and denial of an isolated request for compensatory time off did not constitute material "adverse employment actions"); *Bennett*, 136 F. Supp. 2d at 247 (exclusion from performance evaluation process and compensation communication meetings were not adverse employment actions as would support prima facie case of race discrimination); *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 539 (S.D. Tex. 1999) (plaintiff's "allegations about undermining her authority as a supervisor, increasing her workload, and giving credit for her work to undeserving non-minorities," did not rise to level of adverse employment actions).

Furthermore, the incidents of unfair treatment that plaintiff contends were retaliation for her filing of a gender discrimination claim are of the exact same character as the incidents of alleged unfair treatment that apparently led to the filing of the claim in the first place. Thus, plaintiff has not satisfied either the third or fourth element of the prima facie case of retaliation based on these actions by Govil.

¶ 45. In regards to the negative performance appraisal, "[n]egative evaluations alone, without any accompanying adverse result, ... are not cognizable." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283-84 (S.D.N.Y. 1999) (collecting cases). Here, plaintiff does not claim that the negative performance appraisal caused any change in the conditions of her employment, nor does she claim that her eventual discharge was the result of this appraisal. As such, this action similarly does not satisfy the third element of the prima facie case.

¶ 46. As for the "demotion," the record indicates that the events that plaintiff complains about — the alleged promotion to Senior Project Manager followed a week later by a "demotion" to Project Manager — occurred *before* plaintiff filed her claim with Bertek. Indeed, it seems that it was precisely this "demotion" — which occurred in late April — that led to the filing of her complaint in early May. Thus, the causation element of the prima facie case is not satisfied for this claim of retaliation. See *McLee v. Chrysler Corp.*, 109 F.3d 130, 136 (2d Cir. 1997) (no inference of discriminatory motivation where plaintiff contacted civil rights offices after, and because of, alleged adverse employment action); *Zorn v. Helene Curtis, Inc.*, 903 F. Supp. 1226, 1250 (N.D. Ill. 1995) (no causal relationship established where evidence giving rise to alleged constructive discharge began before employee complained of discrimination).

¶ 47. Plaintiff's termination is clearly an adverse employment action. Yet we find it difficult to see, absent other evidence, how this action was the result of a protected activity: plaintiff's termination came nearly seven months after she filed the current lawsuit, and over one and a half years after she filed the original claims of discrimination with Bertek, the Vermont Attorney General, and the EEOC. See *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) (if plaintiff relies solely on temporal proximity between the protected activity and the adverse action to show retaliation, a proximity of time of less than six months generally is required to establish a prima facie case); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (proximity in time of three months between the protected activity and

the adverse action is alone insufficient to make out a prima facie case). Plaintiff has not pointed to other evidence of retaliation.

¶ 48. Even were we to accept that plaintiff has made out a prima facie case of retaliation in regards to her termination, we find that she has not demonstrated that defendants' reasons for the discharge were a pretext for retaliation. Defendants claim that plaintiff was discharged due to the disclosure of confidential company information to a recruiter and one of Bertek's competitors. Plaintiff does not argue against the claim that the information she disclosed via her résumé was confidential and that, in distributing the résumé, she violated the confidentiality agreement that she had signed. She contended in an affidavit that the trial court struck that there was no injury to the company for any information revealed and that other individuals had revealed similar information without consequences. Even if the information were properly before us, her statements constitute only general, conclusory and self-serving allegations with no supporting detail that allows a trier of fact to determine their credibility and weight. As we emphasized earlier, conclusory allegations without facts to support them are insufficient to survive summary judgment. *Quechee Lakes Landowners' Ass'n*, 170 Vt. at 28, 742 A.2d at 736. Thus, plaintiff has not met her burden at this stage, and the grant of summary judgment in favor of defendants was appropriate.

## V. Other

¶ 49. The parties have briefed two other issues that we do not reach in light of our disposition. Plaintiff argues that the trial court erred in finding that an individual supervisor is not liable under FEPA and in dismissing Sharad Govil as a defendant. Because we uphold the decision to grant summary judgment to defendants on all claims, we need not reach this issue.

¶ 50. Defendants argue that the dismissal of the retaliation claim should be upheld as a discovery sanction because of plaintiff's refusal to identify her current employer despite the trial court's order to do so. We have upheld the grant of summary judgment for defendants on this claim and do not have to reach this argument.

*Affirmed.*