# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 13-1-14 Vtec |

| | |
|---|---|
| St. Johnsbury Academy Act 250<br>    Permit Amendment Application Appeal<br>    (Act 250 Application # 7C0355-10-1) | DECISION ON MOTION |

**Decision on Motion for Summary Judgment**

The matter presently before Court relates to an Act 250 Permit Amendment issued to St. Johnsbury Academy ("the Academy") by the District 7 Environmental Commission ("Commission"). The Academy seeks to renovate and expand an existing dormitory building known as the Cramton House ("the Project"). The Cramton House is listed on the National Register of Historic Places as a contributing resource in the St. Johnsbury Main Street Historic District and is therefore undisputedly a historic building.

The Commission held a hearing on the Project application on July 1, 2013, in which the Vermont Division for Historic Preservation ("DHP") participated. The Academy made numerous changes to the Project design based on DHP's input. The Commission issued the Academy an Act 250 Permit for the Project on July 17, 2013. This permit was not appealed and is therefore final and binding on all parties. On October 25, 2013 the Academy filed a permit amendment application seeking to revise the Project design in a number of ways, which the Commission granted on December 30, 2013 and DHP timely appealed to this Court. DHP is concerned that the changes to the Project design allowed by the permit amendment will have an adverse effect on the historic Cramton House.

Both DHP and the Vermont Natural Resources Board ("NRB") filed motions for summary judgment asking the Court to deny the amendment application as a matter of law because the Academy is not entitled to seek an Amendment under Act 250 Rule 34(E).

DHP is represented in this appeal by attorney Dale E. Azaria, the NRB is represented by attorney Melanie Kehne, and the Academy is represented by attorney Matthew T. Daly.

1

## Factual Background

For the sole purpose of putting the pending motions into context the Court recites the following facts which it understands to be undisputed:

1.     St. Johnsbury Academy is a private secondary school that also serves public school students in the City of St. Johnsbury ("City") and the surrounding towns.

2.     The Academy owns the historic Cramton House, located on Park Street in the City, which it currently uses as a dormitory.

3.     The Cramton House is listed on the National Register of Historic Places as a contributing resource in the St. Johnsbury Main Street Historic District.  It is described in the National Register as "a 2 ½ story, clapboard Queen Anne house of irregular plan.  It is distinctive for the ornamental spool and shingle work of its porches and window bays."

4.     The Academy sought an Act 250 Permit for an approximately 1,200 square foot addition to the Cramton House to increase the number of bedrooms from four to six and the number of faculty apartments from one to two, thereby expanding the Cramton House's capacity from eight students and one family to twelve students and two families.

5.     The Commission held a properly noticed hearing on this application on July 1, 2013 in which the Vermont Division for Historic Preservation participated.

6.     The Commission recessed this hearing in order to provide the Academy and DHP an opportunity to file a joint agreement resolving DHP's aesthetic and historic preservation issues with the project design and alleged adverse impacts on the historic Cramton House.

7.     By letter from DHP to the Commission dated July 10, 2013, DHP asked the Commission to impose 11 conditions on the project design to mitigate what it thought were undue adverse impacts on the historic Cramton House.  The Academy agreed to all but one of these conditions.  This letter and the agreement between DHP and the Academy indicate one of DHP's primary concerns to be maintenance of a distinction between the new addition and the historic portion of Cramton House.

2

8. The Commission approved the addition to the Cramton House and issued the Act 250 Permit[1] ("the Underlying Permit") on July 17, 2013. The Underlying Permit decision recognizes the agreement between the Academy and DHP in its Findings of Fact.

9. The Academy, on October 25, 2013, filed Application # 7C0355-10-1 ("the Amendment Application"), seeking to alter the final design approved by the Underlying Permit in the following ways:

   a. Instead of the 6/1 Colonial Revival-style muntin pattern[2] windows planned for the addition on the west side of the building, windows that match the Queen Anne-style replacement windows of the existing historic site;

   b. Changing the appearance of the secondary entrance on the southerly street-facing "primary" façade from a modern-looking connecter between the existing historic house and the new addition to a more traditional front entry door with sidelights;

   c. Changing the details of the south facing gable of the new addition (on the west side of the building) from a plain clapboarded gable with a single 4-light fixed sash to a gable with decorative shingle detail above a horizontally oriented, 5-light fixed sash. Decorative shingle panels are also proposed for the west- and north-facing gables in the addition;

   d. Reducing the number of windows on the second story of the addition where it connects to the existing historic house from two to one;

   e. Adding a roof over the newly created ground-level entrance for protection.

10. DHP opposes these changes and asserts that they will blur the distinction between the old, historic portion of the Cramton House and the new addition and, therefore will have an undue adverse effect on the historic building.

11. The Academy characterizes these changes as practical alterations that improve efficiency and "make the building better."

---

[1] This underlying permit was characterized as a permit amendment as the entire St. Johnsbury Academy facility is subject to an earlier Act 250 Permit. This underlying Permit is identified as No. 7C0355-10.

[2] A "muntin" is the strip of wood or metal separating and holding individual panes of glass in a window.

**Motions for Summary Judgment**

The court will grant summary judgment if a moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the Court will accept as true all factual allegations made in opposition to the motion and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted). In order to establish that a material fact is either disputed or undisputed a party must support their assertions with citations to materials in the record. V.R.C.P. 56(c).

**I.        Act 250 Rule 34(E), the Stowe Club Highlands Analysis.**

Because the parties seem to be in agreement that the question of whether the project, as amended, complies with all relevant Act 250 Criteria would require further factual development, the sole question raised in the DHP and NRB's motions for summary judgment is whether the Academy is entitled to seek an amendment to its Permit. Where a final and binding Act 250 permit has been issued, it is only under certain circumstances that an applicant can seek to amend a permit condition.

Determining whether an applicant is entitled to seek an amendment requires a three-step analysis, originally discussed by our Supreme Court in In re Stowe Club Highlands and later codified as Rule 34(E) of the Natural Resources Board Act 250 Rules. Code of Vt. Rules 12 004 060, available at http://www.lexisnexis.com/hottopics/codeofvtrules. First, the district commission, or this Court on appeal, must determine "whether the applicant proposes to amend a permit condition that was included to resolve an issue critical to the issuance of the permit. This determination shall be made on a case-by-case basis." Id. If the condition was not included to resolve a critical issue, then the applicant is entitled to seek an amendment. If, however, the condition was critical to the issuance of the permit, we must "consider whether the permittee is merely seeking to relitigate the permit condition or to undermine its purpose and intent." Id. If the applicant is only seeking to relitigate or undermine the condition, the analysis ends and the applicant is not entitled to seek an amendment. If, in the alternative, the

4

applicant is not merely seeking to relitigate or undermine the condition, we must weigh the competing goals of finality and flexibility based on an enumerated list of factors.

In the present motions for summary judgment, the NRB and DHP seek judgment in their favor and ask the Court to find that the relevant condition was critical and that furthermore, even if the Academy is not seeking to relitigate the Underlying Permit, finality outweighs flexibility as a matter of law.

## II.     The Academy's Permit Amendment Application

DHP's appeal of the Permit Amendment Application raises two legal issues: the question at issue in these motions for summary judgment—whether the Academy is entitled to seek a permit amendment—and if they are, the merits of the appeal and whether the proposed amendment complies with the relevant Act 250 Criteria.  Here, the only Act 250 Criterion at issue is Criterion 8 as it relates to the proposed project amendments' alleged undue adverse impacts upon the historic Cramton House and the St. Johnsbury Main Street Historic District in which the Cramton House is located.

As noted above, the Academy seeks to modify the style of windows used on the new addition, certain details regarding the shingles and lights over one entry, and the addition of a roof over the entry.  There are no permit conditions that specifically address these elements. Rather, the condition cited by DHP and the NRB, Condition 2, states simply: "The project shall be completed, operated and maintained in accordance with the Findings of Fact and Conclusions of Law and Order #7C0355-10, the plans and exhibits on file with the District Commission, and the conditions of this permit."  (State of Vermont Land Use Permit #7C0355-10 at 1, filed May 19, 2014).

The Findings of Fact in the decision approving the Underlying Permit references 11 proposed conditions that DHP sought in order to mitigate any impacts on the historic building. The Academy, and ultimately the Commission, agreed with all but one, condition four, as set out in the Commission's Findings of Fact, Conclusions of Law, and Order.  While these proposed conditions relate generally to DHP's goal of maintaining a distinction between the historic and new portions of the Cramton house, none specifically address the elements the Academy now seeks to change in the Permit Amendment.

5

Given the broad nature of the condition relied upon by DHP in its motion, the Court cannot say that the Amendment Application seeks to amend a condition that was critical to the issuance of the permit without further factual development. Rule 34(E) itself states that the determination of whether a condition was critical to the issuance of the permit "shall be made on a case-by-case basis." Code of Vt. Rules 12 004 060, available at http://www. lexisnexis.com/hottopics/codeofvtrules. Where, as here, the permit condition invoked requires that a development be constructed in accordance with the decision, plans, and exhibits presented to the Commission, a question of fact arises as to whether an element of those plans was critical to the issuance of the permit or not. Certainly, some details on a given plan will be critical to the issuance of the permit and others will not. For example, in an application for a commercial development where traffic and pedestrian safety is a central issue, the depiction of walkways, driveways, and site access points on a site plan would likely be critical to the issuance of the permit, but the depicted color of the building or style of window muntins would likely not. Here, the sole issue is whether the amendments amount to an adverse impact on the historic Cramton House and the aesthetic features of the design. Although the Amendment Application certainly amends the project in ways that DHP finds significant, we cannot say without further factual development whether or not the Amendment Application seeks to amend a critical condition.

The determination of whether or not finality outweighs flexibility is also undertaken on a case-by-case basis and dependent on the specific facts of a given case. In re Ashford Lane HOA Act 250 Application, No. 69-5-13 Vtec, slip op. at 4–5 (Vt. Super. Ct. Envtl. Div. Dec. 6, 2013) (Walsh, J.). We also note, in the words of the former Environmental Board, that "Act 250 permits are written on paper, not carved in stone, and the relitigation concepts embodied in [Act 250 Rule 34(E)] cannot be considered to be unconditionally ironclad, as, in some sense, every permit amendment application is a relitigation of an initial permit condition." Re: Dr. Anthony Lapinsky and Dr. Colleen Smith, Nos. 5L1018-4 and 5L0426-9-EB, Findings of Fact, Conclusions of Law, and Order, at 18 (Vt. Envtl. Bd. Oct. 3, 2003).

The facts regarding what conditions the Amendment Application actually seeks to change, whether those conditions were critical to the issuance of the permit, and whether

6

finality outweighs flexibility in considering changes to those conditions are either lacking or disputed. The facts relevant to making these determinations will also be relevant to the ultimate question, should we reach it, of whether or not the design changes proposed in the Application Amendment will have an undue adverse effect on the historic Cramton House. It is important to note that under this Criterion it is DHP, the project opponent, who bears the burden of proof to show that the project will have an undue adverse effect. 10 V.S.A. § 6088.

## Conclusion

Given this burden and the relevant legal standards, neither DHP nor the NRB has shown the absence of a genuine dispute of material fact or that they are entitled to judgment as a matter of law that the Academy's Amendment Application must be denied. Therefore, the DHP and NRB Motions for Summary Judgment are **DENIED**.


Electronically signed on February 6, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

7