STATE OF VERMONT
SUPERIOR COURT – ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| | { | |
| **In re All Metals Recycling, Inc.** | { | **Docket No. 171-11-11 Vtec** |
| **Discretionary Permit Application** | { | |
| | { | |

### Decision on Cross-Motions for Summary Judgment and Motion to Amend Statement of Questions

Before us is an application for a discretionary zoning permit seeking approval for Appellee All Metals Recycling, Inc. (All Metals) to establish an outdoor storage area and install a scale house and scale at 38-42 Dorset Lane in the Town of Williston, Vermont to conduct what the application terms a "metals recycling operation." Appellee Riggs Properties and Interested Person the Town of Williston, Vermont (the Town) are owners of the subject property on which All Metals seeks to conduct its proposed project. After a hearing, the Town of Williston Development Review Board (the DRB) granted the permit with conditions. Darlene Ashley, John Chandler, James Babcock, Jennifer Ashley, William Babcock, Shawn Chapman, William Burnett, Jeannine Burnett, Patty Shortsleeves, George Shortsleeves, Gary Boutin, Michael Burnett, and Mark Burnett (Neighbors) appeal the DRB's decision and have filed an amended Statement of Questions including ten questions, five of which remain for this Court's review.[1]

Now pending before the Court are All Metals' motion for summary judgment on Neighbors' Questions 3–5; the Town's motion for summary judgment on Neighbors' Question 10; Neighbors' cross-motion for summary judgment on all questions; and Neighbors' second motion to amend their Statement of Questions.

All Metals is represented by Robert F. O'Neill, Esq. Neighbors are represented by Hobart F. Popick, Esq. The Town is represented by Paul S. Gillies, Esq.

### Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1.  All Metals maintains a place of business at 38-42 Dorset Lane, Williston, Vermont (the Williston facility).

---

[1] In an April 2012 decision, we disposed of Neighbors' original Questions 1, 2, 6, 7, and 9, and we granted Neighbors' motion to amend their Statement of Questions to include a Question 10. In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 11–12 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.).

2. The Williston facility is located in the Town's Gateway Zoning District North (GDZN District).

3. The majority of the Williston facility consists of a portion of a commercial building and associated grounds which All Metals sub-leases from ReSOURCE: A Nonprofit Community Enterprise, Inc. (ReSource).

4. All Metals is one of three tenants in the 38-42 Dorset Lane building. In total, All Metals occupies roughly 10 to 15% of the 1800-square foot building, or between 180 and 270 square feet.

5. All Metals occupies two interior areas of the building, including a small office and a processing room containing hydraulic shears, mechanized Sawzall saws, and a platform scale.

6. All Metals also leases exterior space from ReSource, including parking space.[2] Nevertheless, All Metals' employees sometimes park outside of the premises leased by All Metals, including to the east side of the building.

7. Additionally, approximately 30% of the land occupied by All Metals is owned by the Town of Williston. On May 7, 2012, All Metals entered into a written lease with the Town authorizing All Metals' use of the Town's land.

8. Three All Metals employees work at the Williston facility.

9. All Metals advertises its services at the Williston facility to the general public.

10. The Williston facility is open for business from 8 a.m. to 4 p.m. Monday to Friday and 8 a.m. to 1 p.m. on Saturday.

11. The Williston facility services between 5 and 10 customers per day, and each customer visit typically lasts between 15 and 20 minutes. In the past, when the facility is busy, up to 3 customers may be at the facility at one time—one in process and two awaiting service.

12. At the Williston facility, All Metals purchases scrap metals from individuals and businesses for resale to third parties. All Metals does not accept garbage or trash at the Williston facility.

---

[2] All Metals formally amended its sublease agreement with ReSource on November 29, 2012 to confirm that All Metals has 10 parking spaces available to it within the area subleased by All Metals. However, Neighbors still dispute whether sufficient parking actually exists inside All Metals' rented premises. See (Resp. to All Metals' Supplemental Statement of Material Facts at 4, filed Dec. 20, 2012.)

13. Trucks bearing metals arrive at the facility and are weighed and then unloaded. The trucks are then weighed again while empty. In some cases, All Metals will pick up a customer's scrap metal and haul it to the Williston facility.

14. At the Williston facility, All Metals sorts and aggregates the metals it purchases. All Metals aggregates the scrap metal so that it may be shipped in a cost-effective manner. Aggregation may include trimming the metals using hydraulic shears and mechanized Sawzall saws and compacting the metals using a mechanized compactor. The aggregation process may also include the use of a tandem excavator and a skid steer.

15. Once the metals are sorted and aggregated, All Metals trucks the metals to either its location in Hardwick, Vermont or directly to a purchaser. All Metals sells the metals to customers who are not "end users," but who include mills, processors, and refiners.

16. Prior to the filing of the permit application at issue in this case, All Metals conducted its business at the Williston facility without a permit from the Town.

17. On September 9, 2011, Sanborn, Head & Associates, on behalf of All Metals, submitted a discretionary permit application to the Town Zoning Administrator to "[e]stablish an outdoor storage area and install a scale house and scale to accommodate [the] existing metals recycling operation." (Neighbors' Exhibit B at AMR 9, 11, filed Oct. 22, 2012.)[3] The permit application identified All Metals as the "Facility Operator." Id. at AMR 11.

18. On October 25, 2011, the DRB considered and approved the discretionary permit application.

## Motions for Summary Judgment

Presently before the Court are All Metals' motion for summary judgment on Neighbors' Questions 3–5, the Town's motion for summary judgment on Neighbors' Question 10, and Neighbors' cross-motion for summary judgment on all remaining questions in Neighbors' Statement of Questions. We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[3] In our April 23, 2012 decision, we noted that under the Bylaw, the term "applicant" only refers to the owner or owners of the property on which development is proposed. All Metals, No. 171-11-11 Vtec, slip op. at 7–8. Thus, All Metals, even with a leasehold interest in the property at issue in this case, is not an applicant under the Bylaw. Id. We nevertheless understand from the permit application and attachments that All Metals, not Riggs Properties or the Town, will conduct the proposed activities and that the permit application was submitted by consultants retained by All Metals with the signed consent of Riggs Properties and the Town. (Neighbors' Exhibit B at AMR 9, 11, filed Oct. 22, 2012.)

as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). When considering cross-motions for summary judgment, we look at each motion individually and give the party opposing a motion the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). Both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their assertions with citations to materials in the record. V.R.C.P. 56(c)(1); see Reporter's Notes—2012 Amendment, V.R.C.P. 56 ("Rules 56(c)(1)(B) and (c)(2) clarify that all asserted facts must be based on admissible evidence"). The Environmental Division follows the Vermont Rules of Evidence, except that we may admit evidence otherwise inadmissible under those rules "if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." V.R.E.C.P. 5(e)(1).

## I.      Questions 3, 4, and 5

Questions 3, 4, and 5 of Neighbors' Statement of Questions ask this Court to classify the activities that All Metals conducts on the subject property to determine if the activities constitute allowed uses in the GZDN District under the Unified Development Bylaw for the Town of Williston Vermont, as amended August 23, 2010 (the Bylaw). As we noted in our April 23, 2012 decision in this case, however, "[t]his Court must consider only Applicants' proposed use, as stated on its Discretionary Permit Application." In re All Metals Recycling, Inc., No. 171-11-11 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Apr. 23, 2012) (Walsh, J.) (internal citations omitted). In that decision, we found that we lacked sufficient evidence in the permit application or in supplemental interrogatories, depositions, or affidavits to determine the precise uses to which All Metals intends to put the subject property. Id. at 6. In response to this current round of motions for summary judgment, however, the parties have presented this Court with ample material establishing the uses for which All Metals seeks approval. Based on this new evidence, we find that the activities for which All Metals seeks a permit are accurately defined as "Waste Management and Remediation Services," which is an explicitly permitted use in the GZDN District.

4

The parties in this case do not dispute that the subject property on which All Metals proposes to continue operating its business is located within the GZDN District, and the plans attached to the permit application show that the property is located off Route 2A.[4] (Neighbors' Exhibit B at AMR 24–27, filed Oct. 22, 2012.) Bylaw Chapter 33 establishes the GZDN District and the applicable development standards within the District, including permitted uses. Those uses not specifically permitted by the Bylaw within the GZDN District are prohibited. Bylaw Table 33.A. The Bylaw defines uses by name and by NAICS classification.[5] According to the Bylaw:

> NAICS classifications include as many as six digits, for the finest level of detail, but for most purposes of this bylaw less detailed classifications are adequate. <u>Smaller classifications include all of the more detailed classifications that begin with the same numbers.</u> For example, NAICS 11 – Agriculture, Forestry, Fishing, and Hunting – includes NAICS 111 – Crop Production, and NAICS 1111 – Soybean Farming.

Bylaw § 30.3.1 (emphasis added).

Permitted uses within the GZDN District off Route 2A include Wholesale Trade (NAICS No. 42) and Waste Management & Remediation Services (NAICS No. 562). Bylaw Table 33.A. Neighbors' Question 3 asks whether one or more of the activities for which All Metals seeks a permit fails "to satisfy the definition of 'Waste Management and Remediation Services.'" (Neighbors' Am. Statement of Questions at 2, filed Feb. 23, 2012.) In relevant part, the 2007 NAICS definition of Waste Management and Remediation Services is as follows:

> Industries in the Waste Management and Remediation Services subsector group establishments engaged in the collection, treatment, and disposal of waste materials. This includes establishments engaged in local hauling of waste materials; operating materials recovery facilities (i.e., those that sort recyclable materials from the trash stream); providing remediation services (i.e., those that provide for the cleanup of contaminated buildings, mine sites, soil, or ground water); and providing septic pumping and other miscellaneous waste management services.

(Neighbors' Exhibit E at 1, filed Oct. 22, 2012.)

Neighbors contend that All Metals' activities cannot be classified as Waste Management and Remediation Services. Based on the undisputed facts, it is clear that All Metals does not

---

[4] As opposed to on Route 2A. The Bylaw limits parcels located on Route 2A in the GZDN District to even fewer uses than parcels in the GZDN District off Route 2A. See Bylaw Table 33.A.

[5] "NAICS stands for the North American Industrial Classification System, which is an all-inclusvie [sic] hierarchical system for describing economic activities." Bylaw § 30.3.1.

5

seek a permit to either provide remediation services or septic pumping. See id. All Metals also does not seek a permit to haul waste; rather, All Metals will, as part of its operations in Williston, haul scrap metal, a saleable good, either to or from its Williston facility. Accordingly, All Metals' activities can only be considered Waste Management and Remediation Services under the NAICS if they constitute the operation of a materials recovery facility, or a facility that "sort[s] recyclable materials from the trash stream." See (Neighbors' Exhibit E at 1, filed Oct. 22, 2012.)

The permit application explicitly describes All Metals' activities as a "metals recycling operation." (Neighbors' Exhibit B at AMR 11, filed Oct. 22, 2012.) This description is consistent with the information supplied by the parties since our last decision. All Metals seeks a permit to purchase a wide variety of materials containing scrap metal from both businesses and private customers, and it accepts both mixed and pre-sorted scrap metals. See (Deposition of Randall F. Towns at 28–29, 32–33, 39–40, 46, filed Oct. 22, 2012.) All Metals does not seek a permit to accept trash or garbage at its Williston facility. However, if a customer arrives at the Williston facility with both garbage and scrap metals, All Metals allows the customer to sort out the scrap metals on-site and place their garbage in a shared, on-site dumpster. (Deposition of Randall F. Towns at 53–54, filed Oct. 22, 2012.) Once All Metals purchases scrap metals from a customer, All Metals' employees will further sort the metals by type, process the metals by crushing or trimming them, and load the sorted and processed metal for storage and shipping. Id. at 57–63. All Metals then sells and ships the metals to buyers who are not end-users, including, according to All Metals, "mills, processors, and refineries in New York, Canada, and Massachusetts." (Aff. of Robbin Towns at 1, filed May 31, 2012.)

The operations for which All Metals seeks a permit are accurately described as the purchase, sorting, and sale of scrap metal for recycling. Despite the fact that All Metals does not seek a permit to accept general garbage or trash, much of the scrap metal it purchases can be described as coming directly "from the trash stream," particularly in cases where customers arrive at the Williston facility with mixed trash and scrap metal. In sum, All Metals seeks a permit to operate a materials recovery facility. Accordingly, we **GRANT** summary judgment on Neighbor's Question 3 in favor of All Metals, and conclude that all of the activities for which All Metals seeks a permit are Waste Management and Remediation Services under NAICS classification number 562.

6

Based on our conclusion above, we also **GRANT** summary judgment on Neighbors' Question 4 in favor of All Metals. Neighbors' Question 4 asks:

> If any Applicant is not eligible for a Discretionary Permit for one or more of the Activities under the Bylaw, is such Applicant eligible for a Discretionary Permit to establish an outdoor storage area and install a "scale house" and scale at the subject property to accommodate such Activity or Activities?

(Neighbors' Am. Statement of Questions at 2, filed Feb. 23, 2012.) Under the Bylaw, all of the activities for which All Metals seeks a permit constitute Waste Management and Remediation Services and thus are eligible for a discretionary permit. See Bylaw Table 33.A. Neighbors point to no activities for which All Metals seeks a permit that cannot be construed as part of a permitted materials recovery facility under NAICS classification number 562. For example, while Neighbors offer evidence suggesting that All Metals' Williston facility has accepted junk cars in the past, All Metals explicitly <u>does not</u> seek a permit to accept or process junk cars at its Williston facility in the future. See, e.g., (Aff. of Robbin Towns at 1, filed May 31, 2012.) If All Metals did accept and process junk cars in violation of the Bylaw or a future permit, it could be subject to an enforcement action by the Town. Such an action is not before us, however.

We also conclude, in response to Neighbors' Question 5, that All Metals does not seek a permit for a Wholesale Trade under NAICS classification number 42, including number 423930. Neighbors' Question 5 asks, "Does any Applicant's engagement in one or more of the Activities fall within the meaning of NAICS classification 423930, thereby making such Activity or Activities a prohibited use in the Gateway Zoning District North that is ineligible for a Discretionary Permit under the Bylaw?" (Neighbors' Am. Statement of Questions at 2, filed Feb. 23, 2012.) We first note that, contrary to Neighbors' legal conclusion in Question 5, uses falling under NAICS classification number 423930, Recyclable Material Merchant Wholesalers <u>are</u> permitted in the GDZN as a subset of the explicitly permitted Wholesale Trade use (NAICS No. 42). See Bylaw § 30.3.1; Table 33.A. In any case, the activities for which All Metals seeks a permit, while bearing some connection to wholesaling, do not best fall within the Wholesale Trade use classification.

Under the NAICS, Recyclable Material Merchant Wholesalers (NAICS No. 423930) are defined as comprising "establishments primarily engaged in the merchant wholesale distribution of automotive scrap, industrial scrap, and other recyclable materials." (Town's Exhibit 2 at 1, filed Dec. 15, 2011.) "Included in this industry are auto wreckers primarily

7

engaged in dismantling motor vehicles for the purpose of wholesaling scrap." Id. The parties in this case do not dispute that All Metals' current business practice is to aggregate the metals it purchases and sell them in bulk. The chief question, however, is not whether All Metals as a business wholesales the metals it purchases, but whether All Metals seeks a permit for activities constituting a Wholesale Trade at its Williston facility.

The NAICS defines the Wholesale Trade sector at length. In relevant part, the NAICS states that:

> Wholesalers sell merchandise to other businesses and normally operate from a warehouse or office. These warehouses and offices are characterized by having little or no display of merchandise. In addition, neither the design nor the location of the premises is intended to solicit walk-in traffic. Wholesalers do not normally use advertising directed to the general public. Customers are generally reached initially via telephone, in-person marketing, or by specialized advertising that may include Internet and other electronic means.

(Neighbors' Exhibit E at 2, filed Oct. 22, 2012.) The activities for which All Metals seeks a permit differ markedly from this definition. The Facility Operations Plan attached to the permit application shows that the Williston facility is largely designed to accommodate "walk-in traffic," (Neighbors' Exhibit B at AMR 25, filed Oct. 22, 2012), and All Metals' interior space at the facility is quite limited. The parties do not dispute that All Metals advertises its services to the general public in an attempt to solicit walk-in business. Finally, All Metals is open during regular business hours and on Saturdays, apparently for the purpose of accommodating walk-in business.

All Metals seeks a permit for activities that constitute the initial collection, sorting, and processing of scrap metal. While All Metals as a business may eventually wholesale the metal it purchases at the Williston facility, All Metals' activities at the Williston facility are best categorized as Waste Management and Remediation Services. Accordingly, we **GRANT** summary judgment on Neighbors' Question 5 in favor of All Metals, and conclude that All Metals does not seek a permit for a use falling under NAICS classification number 423930, Recyclable Material Merchant Wholesalers.

## II. Question 8

Neighbors' Question 8 asks, "To the extent the Town of Williston is an Applicant for the Discretionary Permit in issue, does the Town have the authority, right and/or standing to be issued such a permit to conduct a private, for-profit enterprise on public property?"

8

(Neighbors' Statement of Questions at 2, filed Feb. 23, 2012.) In our April 23, 2012 decision in this matter, we interpreted Question 8 as asking "whether the Town's constitutionally and statutorily allotted powers including letting All Metals conduct its activities on Town property, with or without a lease agreement." All Metals, No. 171-11-11 Vtec, slip op. at 8. On May 7, 2012, All Metals entered into a written lease with the Town authorizing All Metals' use of the Town's land identified in the site plan attached to All Metals' permit application. (Neighbors' Exhibit B at AMR 88–97, filed Oct. 22, 2012.) Accordingly, we now review Question 8 in light of the May 7, 2012 lease.

"In municipal zoning application appeals, this Court has repeatedly stated that an applicant has the initial burden to produce some evidence of title or an interest in the property to be developed." In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.) (internal citations omitted). This burden is low, and "[o]nce some evidence has been put forth on an applicant's interests and right to develop the property, 'further claims to title, or claims attacking the same must go to the appropriate Superior Court.'" Id. (citing Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec, slip op. at 6–7 (Vt. Envtl. Ct. Jan. 24, 2006)). No parties have disputed the Town's ownership of its portion of the parcel of land on which All Metals proposes to conduct its activities, and in light of the lease agreement between All Metals and the Town, we find that All Metals has made a sufficient showing of its control over the subject property. See (Neighbors' Exhibit B at AMR 88–97, filed Oct. 22, 2012.)

In our April 23, 2012 decision, we additionally suggested that the ability to review a lease between the Town and All Metals, which was not before the Court at the time of our decision, might enable us to answer Neighbors' Question 8. That is, we suggested that we might be able to determine whether the agreement regarding All Metals' use of Town property furthered a public purpose. Upon further research, however, we conclude that the Vermont Rules of Environmental Court Procedure and the applicable statute, Chapter 117 of Title 24 (Municipal and Regional Planning and Development), provide for Environmental Division review only of challenges to decisions or actions of appropriate municipal panels. 24 V.S.A. § 4471 ("An interested person . . . may appeal a decision . . . by an appropriate municipal panel to the environmental division.") (emphasis added). 24 V.S.A. § 4303(3) defines an "appropriate municipal panel" as "a planning commission performing development review, a board of

9

adjustment, a development review board, or a legislative body performing development review." Although 24 V.S.A. § 4303(9) defines "legislative body" to include a town's selectboard, in this case, the DRB performed development review, not the Town's selectboard. Instead, the selectboard exercised its power to enter into a lease, which is authorized under 24 V.S.A. § 2403 and is an action that is outside the scope of this Court's review. See In re Saman ROW Approval, No. 176-10-10 Vtec., slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.) (holding that, generally, "[c]hallenges to selectboard decisions and actions do not come before this Court.") Neighbors' legal arguments have failed to persuade us otherwise.

Neighbors' Question 8 does not ask that we review an action of an appropriate municipal panel, nor is it a challenge to the constitutionality of a zoning bylaw, either on its face or as applied. See id. at 1. Rather, Neighbors' Question 8 poses a question regarding the propriety of a contractual lease arrangement between the Town and All Metals, which we may not answer. Thus, to the extent that Neighbors' Question 8 asks this Court to make more than a threshold determination of ownership or control and review the adequacy of the lease between the Town and All Metals, we find that it is beyond our subject matter jurisdiction. Accordingly, we **DISMISS** Appellant's Question 8.

### III. Question 10

Neighbors' Question 10 asks, "Should Applicants have been denied a discretionary permit where Applicants failed to demonstrates adequate provision for off-street parking and loading as required by Chapter 14 of the Bylaw?" Bylaw Chapter 14 sets standards for off-street parking and loading and applies to all development for which a permit is required by the Bylaw. Bylaw § 14.1.1. "Existing and proposed parking and loading areas must be clearly shown on the plans submitted with any application for a permit." Id. Under Bylaws Table 14.A, which establishes minimum parking requirements for developments, All Metals operations appear to fall under the "Industrial" category. For development in the "Industrial" category, the Bylaw states, "Use 1.00 spaces per 1000 SF GFA as a starting point. The actual requirement will be set by the Administrator or DRB."

Pursuant to Bylaw Chapter 14, All Metals' permit application includes a "Facility Operations and Landscaping Plan." (Neighbors' Exhibit B at AMR 25, filed Oct. 22, 2012.) The plan shows five separate parking areas, two of which appear to include 17 marked parking spaces. See id. Because All Metals' shares its premises with other businesses, however, it is

unclear how many of these spaces may be used by All Metals during All Metals' operating hours. All Metals contends that it is also possible to park in several of the parking areas without marked parking spaces, which Neighbors dispute. See (Resp. to All Metals' Supp. Statement of Material Facts at 2, filed Dec. 20, 2012.) Neighbors also dispute whether All Metals has the right to use the marked parking spaces indicated on the plan under the terms of All Metals' sublease with ReSource. (Appellants' Response to Town's Statement of Material Facts at 2, filed Oct. 22, 2012.)

All Metals acknowledges that its initial sublease with ReSource did not address parking. See (Resp. to All Metals' Supp. Statement of Material Facts at 3, filed Dec. 20, 2012.) As a result, All Metals amended its sublease with ReSource on November 29, 2012 to include the statement: "Parking. The Sublease shall have available for its exclusive use 10 of the parking spaces located within the area of the Sublease." (All Metals' Exhibit F at 7, filed Dec. 3, 2012.) Even in light of this sublease amendment, however, we continue to find a dispute of material fact as to the amount of parking available to All Metals. The sublease amendment is unclear whether it expands the area subleased to All Metals to include some of the parking areas designated on All Metals' Facility Operations Plan outside of All Metals' subleased premises, or whether it simply establishes that 10 parking spaces can exist within All Metals' subleased premises. Because we lack a plan that clearly marks out parking spaces within the area subleased by All Metals, and because Neighbors dispute whether several of the parking areas are useable as such, we cannot determine whether All Metals meets the off-street parking requirements of Bylaw Chapter 14.[6]

Accordingly, we **DENY** summary judgment to both Neighbors and the Town on Neighbors' Question 10 and conclude that a dispute of material facts exists as to whether All Metals has sufficient parking to meet the requirements of Bylaw Chapter 14.

### Neighbor's Second Motion to Amend Statement of Questions

As a final matter in this decision, we review Neighbors' second motion to amend their Statement of Questions. Neighbors propose to add a Question 11, which reads:

> To the extent that the Court otherwise determines that Applicants are eligible for a Discretionary Permit, what should be the applicable terms of the lease agreement (including, without limitation, lease term and periodic rent) for the

---

[6] We note that the parties have provided the Court with numerous copies of maps and plans of the subject property, but that many of these are illegible.

portion of the All Metals Recycling, Inc. premises that is located on real property owned by the Town of Williston?

(Neighbors' Second Mot. to Amend Statement of Questions at 1, filed Nov. 21, 2012.) This Court liberally grants motions to amend statements of questions when the other parties involved in the appeal are not unfairly prejudiced by our doing so. In re Ridgewood Estates Homeowners Ass'n, No. 57-4-10 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 26, 2011) (Wright, J.) (citing Appeal of Town of Fairfax, No. 45-3-03 Vtec, slip op. at 5 (Vt. Envtl. Ct. June 13, 2005) (Wright, J.)).

In this case, however, we need not address whether the Town and All Metals will be unfairly prejudiced if we grant Neighbors' motion. Neighbors' proposed Question 11 is entirely outside of this Court's subject matter jurisdiction. While we may consider threshold showings of private property ownership, see, e.g., Leiter, No. 85-4-07 Vtec, slip op. at 4–5, and impose conditions on the grant of a discretionary permit under Bylaw § 6.6.3.2, see, e.g., In re Simpson Dev. Corp., No. 53-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 7, 2006) (Durkin, J.) (stating that in a *de novo* appeal, "the Court's role is to place itself in the shoes of the municipal panel"), we know of no law granting this Court the authority to dictate the terms of a lease of real property between two parties.

Accordingly, we **DENY** Neighbors' second motion to amend their Statement of Questions.

### Conclusion

For the reasons detailed above, we issue the following ruling on the pending cross-motions for summary judgment on Neighbors' remaining questions. We **GRANT** summary judgment to All Metals on Questions 3, 4, and 5. We **DISMISS** Question 8 as beyond our subject matter jurisdiction. We **DENY** summary judgment to both the Town and Neighbors on Question 10.

We also **DENY** Neighbors' second motion to amend their Statement of Questions.

Therefore, only Neighbors' Question 8 remains for trial. We direct all of the parties in this case to submit in writing, by **April 18, 2013**, a list of unavailable dates in the months of July, August, and September 2013 for a trial. The parties should also indicate, in their letters to the Court, whether a one-day trial will be adequate for a full presentation of the issues remaining in this appeal. If an additional day or days will be required, the parties should indicate their

12

estimate on trial duration in their letters. The Court will thereafter notify the parties of the trial date or dates.

Done at Burlington, Vermont this 4th day of April, 2013.

_____

Thomas G. Walsh, Environmental Judge