STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 72-5-14 Vtec |

| | |
|---|---|
| Moody Subdivision Approval | DECISION ON MOTION |

Alicia Moody (Applicant) seeks to subdivide approximately 6.1 acres of land located at 2049 Stage Road in the Town of Benson, Vermont (the Town) into two lots. The Town of Benson Development Review Board (DRB) approved the subdivision. Neighboring landowners Morris and Torrin Silver (Appellants) timely appealed that decision to this Court and filed a Statement of Questions consisting of twelve questions. Appellants moved for summary judgment on Appellants' Questions 1 through 5, and Applicant moved for dismissal of Appellants' Questions 6 through 10.

In a Decision dated February 20, 2015, this Court expressed its intent under Rule 56(f) of the Vermont Rules of Civil Procedure to grant summary judgment for the non-moving party (here, Applicant) on Questions 2, 3, 4, and 5. Specifically, we clarified that our de novo review does not include reviewing the adequacy of materials submitted to the municipal panel and that the Town of Benson Unified Bylaws (Bylaws), as applied to the application before the Court, are not invalid. Moody Subdivision Approval, No. 72-5-14 Vtec, slip op. at 5, 8 (Vt. Super. Ct. Envtl. Div. Feb. 20, 2015) (Walsh, J.).

In accordance with Rule 56(f)(1), the Court gave the parties 30 days in which to respond to its proposed order. Both parties filed responsive pleadings. Our review of those pleadings leads us to conclude that summary judgment in favor of Applicant is warranted as to Questions 2, 3, 4, and 5. Additionally, the responsive pleadings clarify what we previously believed to be a dispute of material fact and we are able to now conclude that material facts are not in dispute. In light of this clarification, we also grant Applicant's motion for summary judgment as to Questions 6, 7, 8, 9, and 10.

## I. Standard of Review

A court may grant summary judgment where a movant "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). We will "accept as true the [factual] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

## II. Appellants' Response

Appellants ask the Court to reconsider the conclusion we proposed in our February 20, 2015 Decision and instead conclude that Applicant's subdivision application is incomplete and/or that the Bylaws are invalid as applied to her application. Appellants do not raise any new factual disputes or new legal arguments in their responsive pleading regarding Questions 2 and 3. Rather, they reiterate their legal arguments from their initial motion for summary judgment.

With respect to Questions 4 and 5 asking whether the Bylaws are invalid as applied to Applicant's subdivision application because they are not in conformance with and do not further the goals and provisions of the Town of Benson Town Plan, Appellants' responsive pleading argues more specifically that as amended, Bylaws § 3.3.5 abandons the 20 acre density requirement in the Town Plan. (Appellants' Response at 4, filed Mar. 23, 2015). Although Appellants cite two sections of the Town Plan that they allege to establish a 20 acre density requirement, neither section establishes any goals or standards. Rather, these sections indicate that although the "plan itself does not specifically protect specific areas," policies in the Bylaws have the effect of doing so, including the 20 acre density requirement. (Town Plan at 15, 19).

Contrary to Appellants' argument, the provisions of the Town Plan referencing the 20 acre density requirement do not "identify specific regulatory tools for achieving open space and limited development goals in the ARR District." Rather, these provisions identify sections of the existing Bylaws that have the effect of achieving open space and limited development in the ARR District. The Town Plan's recognition of these sections does not by itself establish goals or

2

standards within the Town Plan, and the Town Plan's mere reference to a policy in the Bylaws cannot be used to prevent changes to the Bylaws themselves.

We also note that Appellants' argument is based on a belief that the 2013 Bylaws eliminated the 20 acre density requirement from prior versions. As applied to the pending appeal, Bylaws § 3.3.5 establishes density requirements in the ARR District. As stated in the prior version of this section:

> The minimum density is 20 acres per principle structure or use on all lots in existence on the date of adoption, except: a) for all undeveloped lots less than 4 acres on such date, one such structure is allowed, b) on all lots with at least 4 acres on such date, but less than 40 acres, two (existing and future) such structures are allowed.

As amended in 2013, this section states:

> The number of principal structures or uses allotted to lots in existence on the date of adoption is a) for all lots less than 4 acres on such date, one such (existing and future) structure is allowed, and b) on all lots with at least 4 acres on such date, but less than 40 acres, two (existing and future) such structures are allowed and c) for lots larger than 40 acres on such date, one principal structure or use (existing and future) is allotted for each 20 acres.

It is clear from the plain language that the amendment did not eliminate the 20 acre density requirement. See In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262 (stating that we will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance"). Both versions of § 3.3.5 establish a minimum density requirement of 20 acres per principle structure or use for lots larger than 40 acres. The only difference between the past and present versions of this section is that rather than establishing a minimum density requirement followed by exceptions for lots less than 40 acres, the current Bylaws establish minimum density requirements for each of the lot sizes including those less than 4 acres, between 4 and 40 acres, and over 40 acres. Thus, even if we were to conclude that the Town Plan provisions referencing the Bylaw's density requirements created enforceable standards for future bylaw amendment, the amended Bylaw conforms to the Town Plan.

For the reasons set forth in our February 20 decision, and for the additional reasoning set forth above, we **GRANT** summary judgment in Applicant's favor on Questions 2, 3, 4, and 5.

3

### III.    Applicant's Response

In our February 20, 2015 Decision, we denied Applicant's motion for summary judgment on Questions 6–10, finding a dispute as to material fact. Questions 6–10 raise questions regarding the future development of Lot 2. In her responsive pleading, Applicant clarified what this Court believed to be a dispute of material fact, enabling this Court to reconsider whether she is entitled to judgment as a matter of law on Questions 6, 7, 8, 9, and 10.

By her responsive pleading, Applicant clarified that on October 15, 2013, Applicant filed an application to subdivide her property into two lots. As indicated on that original application, one structure was proposed for Lot 1, and Lot 2 was to be for "land only." Following meetings with both the DRB and the Zoning Administrator in February 2014, Applicant's representative modified her application and filed the amended application with the DRB. As amended, the application seeks approval to subdivide the 6.13 acre property into two lots, Lot 1 and Lot 2. Although the application indicates that Lot 2 will be created "as land only" and that there are "no plans on building on [Lot 2] at this time," the amended application clearly proposes one principal structure or use on each lot. (Application SD 2014-02 at 1, 2, deemed complete Mar. 31, 2014). The amended application also indicates the development envelopes for each lot as the area within the setback distances. (Applicant's Response at 2, filed Mar. 20, 2015).

Because it was the amended application that was reviewed by the DRB, that is the application we consider when reviewing Applicant's motion for summary judgment on Questions 6–10.

Question 6 asks whether the DRB's decision to establish a building envelope as part of their approval is premature since the application seeks authorization for use as "land only." In this *de novo* appeal, "we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.). As indicated above and in our February 20 Decision, the undisputed facts before the Court establish that by her amended application

4

Applicant seeks to allot one building to Lot 2 with setback distances establishing the building envelope.

Questions 7–10 ask whether the subdivision application complies with Bylaws §§ 7.2, 7.4, 7.5, 7.6, and 8.8.1. These Questions challenge approval of the application based on Appellants' belief that Lot 2 has been designated for use as "land only." Question 7 asks whether Lot 2 must be preserved as undeveloped land in perpetuity under §§ 7.2 or 7.6. Section 7.2 requires that lots created without an allotted principal structure or use be preserved as undeveloped land. Section 7.6 requires that lots "created without allotted principal structures or uses . . . be preserved as undeveloped land through permit conditions." Questions 8, 9, and 10 ask whether approval of the application must include conditions on future development of Lot 2 under §§ 7.2, 7.4, 7.5, and/or 8.8.1. Based upon the undisputed facts, § 7.2, § 7.4 and § 7.6 do not apply to proposed Lot 2, which has a development envelope, is allotted one principal structure or use, and is less than 20 acres.

Section 7.5 provides that

> for multi lot subdivisions with proposed joint use public or private accesses the DRB may at its discretion require plans showing how subsequent structures, roads, common land, utilities, septic systems, etc., could be located and constructed to protect the natural environment, prevent damage to neighboring property, and minimize any undue adverse effect on Benson's scenic beauty.

Bylaws § 7.5. Pursuant to this section, the DRB and this Court in this de novo appeal have discretion to require showing the location of subsequent structures, roads, and the like. The application before the Court is for a small two-lot subdivision and does not include joint access. We therefore conclude that the additional showings described in § 7.5 are not required.

Section 8.8.1 of the Bylaws describes the process for applying for subdivision approval. It requires that the application clearly identify the number of principal structures or uses allotted. It also requires that drawings be provided showing the location of designated or proposed development envelopes. Applicant's amended application clearly states that one structure is to be allotted to each lot and that the setback distances establish the development envelope for Lot 2. Based on the undisputed facts, we conclude that Section 8.8.1 is satisfied.

5

Appellants argue that they did not receive the amended application that was considered by the DRB.[1] This argument is insufficient to create a genuine dispute of material fact regarding the application's compliance with the Bylaws. As interested parties, Appellants were entitled to and received notice of the DRB proceedings. Following notice, it was incumbent upon Appellants to review the complete DRB file as they considered the application for subdivision approval. There is no obligation of the Town, the DRB, or Applicant to serve Appellants with any application documents.

For these reasons, based on the undisputed facts, Applicant is entitled to judgment as a matter of law on Appellants' Questions 6, 7, 8, 9, or 10. We therefore **GRANT** summary judgment in favor of Applicant on Questions 6, 7, 8, 9, and 10.

## IV.     Remaining Questions 1, 11, and 12

Questions 1, 11, and 12 remain for trial. Question 1 asks whether the proposed subdivision complies with the 2013 Subdivision Bylaw. Question 11 asks whether the DRB's decision violated 24 V.S.A. § 4464(b)(1) by failing to state the conclusions and the basis for those conclusions. Question 12 asks whether the DRB's process denied Appellants due process or opportunity for a fair and impartial hearing.

We believe both Questions 1 and 12 should be clarified pursuant to V.R.E.C.P. 5 (f) with more specificity, providing both Applicant and the Court with notice of Appellants' specific challenges.

In further review of Question 11, which asks whether the DRB's decision violated 24 V.S.A. § 4464(b)(1) by failing to state the conclusions and the basis for those conclusions, we note that although § 4464(b)(1) requires that the DRB's decision include "a statement of the factual bases on which the appropriate municipal panel has made its conclusions and a statement of the conclusions," the minutes of the meeting satisfy this requirement, "provided the factual bases and conclusions relating to the review standards are provided in conformance with this subsection." 24 V.S.A. § 4464(b)(1). The materials provided by Appellants, which

---

[1] Appellants admit that they had notice of the hearing and they therefore had an opportunity to be present at the hearing. Instead they relied on their letter sent to the DRB indicating their opposition to the development and the reasons therefore. There is no dispute, however, that the amended application before the DRB, and therefore the application before this Court, requests one allotted structure per lot.

6

include the DRB's decision and minutes from the hearing appear to satisfy this requirement. For this reason, we intend to conclude, pursuant to V.R.C.P. 56(f)(3), that Applicant is entitled to judgment as a matter of law on Question 11.

### Conclusion

For the above reasons, we **GRANT** summary judgment in Applicant's favor as to Questions 2, 3, 4, 5, 6, 7, 8, 9, and 10.  Furthermore, we hereby provide notice of our intent to **GRANT** summary judgment in Applicant's favor as to Question 11 pursuant to V.R.C.P. 56(f)(3) for the above described reasons.

This matter shall proceed to a status conference pursuant to the enclosed notice to discuss the process for clarifying Questions 1 and 12 and to establish an opportunity for the parties to respond to our intended action of entering summary judgment in favor of Applicant on Question 11.


Electronically signed on April 28, 2015 at 02:39 PM pursuant to V.R.E.F. 7(d).


_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division