16-1623-cv
Hiramoto v. Goddard Coll. Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of March, two thousand seventeen.

PRESENT:   BARRINGTON D. PARKER,
                   REENA RAGGI,
                   SUSAN L. CARNEY,
                            *Circuit Judges*.

------------------------------------------------------------------------
JUDY HIRAMOTO,
                            *Plaintiff-Appellant*,


            v.                                                   No. 16-1623-cv

GODDARD COLLEGE CORPORATION,
                            *Defendant-Appellee*.
------------------------------------------------------------------------

FOR APPELLANT:                      Norman E. Watts, Watts Law Firm, PC, Woodstock, Vermont; Stephen Bergstein, Bergstein & Ullrich, LLP, Chester, New York.

FOR APPELLEE:                       Jonathan D. Persky, Morgan, Brown & Joy, LLP, Boston, Massachusetts.

Appeal from a judgment of the United States District Court for the District of

Vermont (Christina Reiss, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the April 25, 2016 judgment of the district court is AFFIRMED.

In this diversity action, plaintiff Judy Hiramoto appeals from an award of summary judgment to the Goddard College Corporation (the "College") on Hiramoto's claim of national-origin discrimination under the Vermont Fair Employment Practices Act ("VFEPA"). *See* Vt. Stat. Ann. tit. 21, § 495(a)(1). Specifically, Hiramoto asserts that she was denied a five-year reappointment to the College's graduate faculty in Fine Arts because she was of Japanese origin and that the district court erred in concluding that she failed to adduce sufficient evidence to carry her burden at either the *prima facie* or ultimate phase of analysis under the *McDonnell Douglas* framework. *See Robertson v. Mylan Labs., Inc.*, 176 Vt. 356, 367, 848 A.2d 310, 321 (2004) (applying burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to VFEPA claims). We review an award of summary judgment *de novo*, resolving all ambiguities and drawing all inferences in favor of the non-movant, and affirming only if the record reveals no genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Matthews v. City of New York*, 779 F.3d 167, 171–72 (2d Cir. 2015). We may affirm on any ground supported by the record, whether or not relied upon by the district court. *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016). We assume the parties' familiarity with the underlying facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm substantially for the reasons stated by the district court.

1. Legal Standard

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff alleging unlawful discrimination bears the initial burden of establishing a *prima facie* case. *See Robertson v. Mylan Labs., Inc.*, 176 Vt. at 366–67, 848 A.2d at 320–21. Doing so raises a presumption of discrimination, shifting the burden to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* at 367, 848 A.2d at 321 (internal quotation marks omitted). If the employer does so, the burden shifts back to the plaintiff to prove that the justification is a "mere pretext" for discrimination. *Id.* To show pretext, "the employee must call the employer's honesty or credibility into question" by proffering facts from which a factfinder could reasonably conclude that the employer's justification is "unworthy of credence." *Gauthier v. Keurig Green Mountain, Inc.*, 200 Vt. 125, 144, 129 A.3d 108, 122 (2015).

The district court concluded that Hiramoto failed to state a *prima facie* case. In the alternative, it concluded that the College had proffered a legitimate, nondiscriminatory reason for not reappointing Hiramoto and that she could not carry her burden of proving that reason to be a pretext for discrimination. Because we agree that Hiramoto's case fails at this final step, we need not decide whether she stated a *prima facie* case.

2. The Decision Not To Reappoint

The College's decision not to reappoint Hiramoto was the culmination of a 2011 Comprehensive Evaluation ("2011 Evaluation") that included a detailed retrospective performance review incorporating Hiramoto's own self-evaluation, two faculty peer

3

reviews, and the substance of prior years' evaluations. The 2011 Evaluation concluded that "sustained, unresolved concerns" existed over Hiramoto's "inability to perform the duties of an MFAIA faculty member"—specifically, her lack of engagement with her students' work and her failure to provide feedback at a level appropriate for graduate students—as well as her "unwillingness to engage in professional development," all of which recommended against reappointment. J.A. 367–68. In arguing that this justification was pretextual, Hiramoto relies upon the same evidence supporting her *prima facie* case. Taken both separately and together, *see Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016) (stating that pretext evidence must be analyzed "as a whole"), however, her evidence cannot carry the burden of rebutting the College's proffered justification.

a. Procedural Irregularities

Hiramoto identifies purported procedural irregularities in the 2011 Evaluation process that, she contends, undermine the College's rationale for not reappointing her. Specifically, Hiramoto argues that (1) her supervisor, Jacqueline Hayes, untimely and unfairly subjected her to the Comprehensive Evaluation system, which had not yet been formally adopted; (2) she was denied the opportunity to select the faculty peers whose reviews would inform the evaluation; and (3) she was afforded no opportunity to review or disagree with the recommendation against reappointment before its referral to the administration. While departures from regular procedures "can raise a question as to the good faith of the process where the departure may reasonably affect the decision," summary judgment is appropriate where "whatever irregularities existed" were either

4

unrelated to discrimination or "did not affect the final [adverse] decision." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41, 45 (2d Cir. 2000).

Hiramoto's first procedural challenge fails to demonstrate discrimination because the February 2011 emails indicating implementation of the Comprehensive Evaluation process before its formal April 2011 adoption demonstrate that Hiramoto was one of *seven* faculty members proposed for review under the new process, of which she is the sole Japanese-American. *Cf. Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (observing that inference of discrimination can arise when individuals outside protected group are subjected to different treatment). While three other faculty members had their evaluations postponed or delayed, no inference supportive of pretext reasonably arises therefrom. The faculty member whose review was postponed was temporarily serving as a Program Director at the time the Comprehensive Evaluation was implemented in early 2011, *see id.* at 494 (stating proposed comparators must be similarly situated in all material respects), and the two other faculty members' evaluations were, like Hiramoto's, initiated in spring 2011, but were merely delayed by peer reviewers' failure to conform to new formatting or the prescribed timeline. More important, Hiramoto points to no evidence of material advantage that these delays conferred on those faculty members, let alone one conferred because they were not Japanese. **[Gray 13–14]** Insofar as Hiramoto argues that the change in evaluation format affected her peer reviewers' views, there is no evidence that the change affected the substance of those evaluations, except inasmuch as reviewers were able to comment

5

on Hiramoto's own self-evaluation and her description therein of difficulties with the administration.

Hiramoto further asserts that she was wrongfully "prevented from replacing the all-white, inexperienced peer evaluators" as "required under the governing rules." Appellant's Br. 35. This argument fails to demonstrate proscribed discrimination because Hiramoto does not identify any rule that established her right to select two peer evaluators except from the proposed pool of four. Rather, the rules afford only an "opportunity to request that the Program Director consider a different faculty member peer to be assigned to the review." J.A. 241; *see Robertson v. Mylan Labs., Inc.*, 176 Vt. at 373, 848 A.2d at 325 (discounting purported manipulation of process as evidence of pretext where no policy was violated). Moreover, Hiramoto concedes that she failed to express any concern that one peer reviewer was "racist," as she now asserts, J.A. 395, or that Hayes had reason to know of such possible bias. Indeed, the only concerns she expressed to Hayes were that the reviewer "had no experience in regards to what it means to be a minority" and that "he was one of the faculty that had undeserved entitlement in that he was appointed to the faculty rather than go[ing] through a search committee." *Id.* at 97. In the end, however, she assented to the selection of this faculty member over two other potential peer reviewers about whom she has expressed no racial bias concerns. On this record, Hiramoto's inability to select minority peer reviewers manifests no procedural irregularity probative of pretext.

While Hiramoto was not given the opportunity to review or object to errors in her adverse evaluation prior to its submission to the College's Academic Vice President, who

6

formally adopted Hayes's recommendation, Hiramoto was allowed to appeal the recommendation. The Vice President reviewed that submission and concluded that no reconsideration of the adverse decision was warranted. The totality of these materials was before the College President when she confirmed the decision not to reappoint. Hiramoto adduces no evidence to suggest that these decisions would have been different had she presented her challenge to the recommendation prior to its submission to the administrative decision-maker. *See Weinstock v. Columbia Univ.*, 224 F.3d at 45.

In sum, the record offers no basis for a jury to infer that the evaluation process was manipulated to generate a pretextual justification for discrimination in the decision not to reappoint her.

b.    Consideration of Earlier Criticisms

Hiramoto contends pretext can be inferred from improper consideration during the 2011 Evaluation of a superseded 2006 peer evaluation and 2009 student complaints. The 2011 Evaluation does quote a passage from a July 2006 critical peer review by Pam Hall, which was not incorporated into the superseding October 2006 evaluation informed by Hiramoto's chosen peer reviewers. Hiramoto has testified, however, that she has no evidence that Hall's review was infected by national-origin bias. Nor does she identify any rule precluding consideration of Hall's review during the 2011 Evaluation. Moreover, to the extent the 2011 Evaluation incorporates evaluations from 2006, it cites predominantly to the *October* 2006 evaluation, which made much the same observations as Hall regarding shortcomings in Hiramoto's supervision of students. Hiramoto does not assert that these observations were tainted by invidious bias.

7

Hiramoto also urges bias from Hayes's consideration of several 2009 student complaints despite then-supervisor Ju-Pong Lin's assurances that the letter memorializing such complaints would "not go into [Hiramoto's] file." J.A. 253. Apart from this proviso, however, Hiramoto has adduced no evidence that Hayes's consideration of the student complaints as part of the 2011 Evaluation was improper, *see Robertson v. Mylan Labs., Inc.*, 176 Vt. at 373, 848 A.2d at 325; *Tori v. Marist Coll.*, 344 F. App'x 697, 701 (2d Cir. 2009) (finding no irregularity where "no rule . . . precluded the Peer Review Committee from considering a letter that had been submitted, and then withdrawn, by a student four years earlier"), or that it was otherwise motivated by improper animus.[1] Indeed, consideration of those complaints is consistent with the belief that Hiramoto's supervision of students was unsatisfactory. *See Robertson v. Mylan Labs., Inc.*, 176 Vt. at 373, 848 A.2d at 325 (rejecting pretext argument where "arguable [procedural] violation . . . reinforced [employer's] rationale rather than showing the rationale was a pretext for discrimination").

Insofar as Hiramoto principally disputes the merits of the students' complaints, their validity is not probative of bias by the College. *See McPherson v. N.Y.C Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (recognizing that "what *motivated* the

---

[1] Hiramoto also offers no evidence to support her argument that Hayes's own Armenian origin admitted an inference of "well-known hostilit[y] towards Japanese-Americans." Appellant's Br. 9. Nor do allegations of occasions when Hayes appeared to ignore her, giving her "a really bad message," *id.*; J.A. 89, reasonably suggest that Hayes's evaluation was actually motivated by national-origin bias instead of the justification proffered.

employer," not "truth of the allegations," is relevant issue where discrimination is alleged (emphasis in original) (internal quotation marks omitted)).

Accordingly, the College's reliance on earlier criticisms in conducting the 2011 Evaluation is insufficient to establish that the conclusions reached in that report were pretextual.

c. Discriminatory Comments

Hiramoto also points to comments by her supervisor and peer reviewers as direct evidence of bias supporting an inference of pretext. Specifically, she asserts that, at the time of her 2006 review, her then-supervisor Danielle Boutet and Academic Dean Susan Fleming each stated that she "may not be able to do this job because of [her] *culture*." J.A. 83 (emphasis added). Assuming that such comments were made—which the College disputes—Hiramoto offers no evidence that they affected the 2006 review. Indeed, that review emphasized peers' positive appreciation of Hiramoto's "Japanese ancestry" and the "diversity [it] br[ought] to the faculty." *Id.* at 225. Moreover, neither Boutet nor Fleming was involved in the 2011 Evaluation that recommended against reappointment, precluding a finding of causal connection between the alleged remarks and that recommendation. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999) (concluding that individual's alleged bias could not have "tainted" adverse decision in which he had no "meaningful role").

Hiramoto argues that the 2011 reviewers' observation that she was "quiet," J.A. 370, 373, and their purported critique of a haiku exercise she conducted with graduate students should be construed as ethnic "slurs." Appellant's Reply Br. 20. Read in the

9

context of specific concerns about Hiramoto's lack of engagement with her students' work and her failure to provide feedback at a level appropriate for graduate students, these observations cannot bear the weight Hiramoto urges. *See Weinstock v. Columbia Univ.*, 224 F.3d at 44–45 (observing that, absent more, it is "not objectively reasonable to label" neutral remarks "as semaphores for discrimination"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681–82 (2009) (rejecting urged discriminatory animus in conduct more plausibly explained by non-discriminatory motive).

Accordingly, Hiramoto cannot rely on these statements to raise a triable issue of fact as to whether the justifications stated in the 2011 Evaluation were pretextual.

3.      Conclusion

We have considered Hiramoto's remaining arguments and conclude that they are without merit. Accordingly, the April 25, 2016 judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court

10